# Staunton

## WRIGHT AND OTHERS V. RABEY.

### September 9, 1915.

1. BOUNDARIES—*Acts 1912, p. 133—Procedure—Action at Law—Harmless Error.*—The remedy given by the act of 1912 (Acts 1912, p. 133) for ascertaining and determining "the boundary lines of real estate" is a summary proceeding at law, and not in equity, provided by the legislature for settling and determining, without a great deal of technical formality, the true boundary lines between coterminous owners or claimants, and the trial is to be by a jury, unless it is waived, and upon issue or issues joined between the parties as in other actions at law. If, however, it was error in the case at bar to compel the defendants to file pleas instead of an answer, they were not prejudiced thereby, since they were allowed to show under their pleas all that it would have been proper to have permitted under the answer tendered.

2. PLEADING — *Rejecting Plea — Other Sufficient Pleas — Harmless Error.*—It is not error to reject a plea where every defense which could have been made under it was permitted under pleas which had been filed and upon which issues were joined; or, if error, it was harmless.

3. BOUNDARIES—*Adjacent Lines.*—Whenever deeds or grants conveying adjacent land tend to identify and fix a disputed boundary, the general rule is they are admissible in evidence.

4. APPEAL AND ERROR—*Verdicts—Conflicting Evidence.*—The verdict of the jury rendered upon conflicting evidence, which has been approved by the trial court, will not be disturbed by this court as contrary to the evidence where the case was fairly submitted to the jury upon the weight, credibility and sufficiency of the evidence.

Error to a judgment of the Circuit Court of Nansemond county in a statutory proceeding to ascertain boundary of land. Judgment for the plaintiff. Defendants assign error.

*Affirmed.*

The instruction given by the trial court, which is referred to in the opinion, is as follows:

"The suit under which this proceeding is brought is a summary method by which disputes between people as to boundary lines may be submitted to the court or jury, that they might hear the evidence, make an investigation and decide where the true boundary line is. That is what this suit is for—what the purpose of it is; without having a great deal of technical formality about it, that you might hear the evidence and say where the true boundary line between the parties in court here today is located.

"You have heard the evidence in this case, and you know what the contention is between the parties. The real question for you gentlemen to decide in the light of the evidence introduced before you is where is this boundary line. It may be where one contends it is, or it may be where the other contends it is, or you gentlemen may think that neither one of those positions is right. You would therefore, if you do not think either one is right, say what the right position is, and so mark it out that there will be no difficulty along those lines.

"There are some rules which you should consider in ascertaining where the boundary line is, I think. The plaintiff makes two contentions here—one that they have a deed for this property, and another that even if they did not have a deed that they own it by reason of adverse possession. We have a law in Virginia that where a party owns property for fifteen years, and enjoys and occupies the property and controls it and uses it as his own for fifteen years against all the world continuously, that even though he had no deed for it at all, that he would get title to that property that he actually occupies. We also have a law that says where there is a written description of the piece of property conveyed to you, it may be by deed, which describes the piece of property as taking in certain lines, and

you take possession under that deed and hold it for fifteen years—you may not actually occupy all of it in the sense of working and using it, but if you hold the described property and hold it against the world for fifteen years, that would give you title. In other words, if you had no deed to it that would give you title. As I have said the plaintiff makes two contentions, one is that he has a deed, and the other is that even though he did not have a deed he has title to it by reason of fifteen years holding. You have heard the evidence in this case and know whether she can maintain her position on either one of those claims. She has a deed here in evidence which she contends includes this property within its boundaries. That deed is before you for your consideration, and to give it such consideration as you think it deserves.

"Defendant on the other hand contends that he has been in possession of this property for fifteen years. Of course both of them could not have been in adverse uninterrupted continuous possession of this property for that time so as to get title by possession alone. But the defendant, in order to maintain his title by reason of adverse possession, will have to show that he has been in actual exclusive possession exclusive of everybody else and holding against the world. Fifteen years of adverse possession would give him possession just as it would to the plaintiff, the difference being in the defendant's case there has been no deed admitted which actually takes this property in, the dispute or contention being on the part of the defendant that his old deed does take the property in and therefore gives it to him. As to that there has been a survey, but about that I express no views as that is for you gentlemen to decide.

"Now it seems to me that those are the facts that I would like to have you gentlemen consider. Now the line that you

gentlemen fix here will be the line which determines the rights of Mr. Wright on the one hand and Mrs. Rabey on the other.

"If you should conclude that Mrs. Rabey's land does not come up to any given point next to Mr. Wright; in other words you cannot fix the line in your verdict unless you believe that Mr. Wright is on the one side and Mrs. Rabey on the other—they are the only two parties in court—you cannot go beyond that. You have got to believe that the lands of Mrs. Rabey and Mr. Wright come together, and if they do not come together you cannot fix the boundary at that point."

Mr. Epes: "The court has not read the pleadings with care. Mrs. Hargrave is a party, or the Hargrave estate is."

Court: "Of course, Mrs. Hargrave being an interested party you can of course deal with the lines between them if you think it goes up to that property, just as you would between Mr. Wright and Mrs. Rabey."

*Epes & Epes,* for the plaintiffs in error.

*Denny & Rabey* and *Melvin E. Cruser,* for the defendant. in error.

CARDWELL, J., delivered the opinion of the court.

This proceeding is under the act of the General Assembly approved March 4, 1912—Acts 1912, p. 133—which provides that any person having an interest in real estate, upon petition filed in the court which would have jurisdiction in an action of ejectment concerning such real estate, shall have the right to have ascertained and designated by the said court the true boundary line or lines to such real estate as to one or more of the coterminous land owners. All persons interested in the coterminous real

estate are required to be made parties to the said petition, which shall be matured for hearing as provided for maturing an action of ejectment, except that it shall not be necessary to serve a copy of the petition. The statute further provides that the trial of the cause shall be conducted as other trials at law and the same rules of evidence shall apply and the same defenses may be made as in other actions at law. The court may, upon application of either party to the petition, by order in term time or in vacation, direct such survey or surveys to be made as may be deemed necessary.

Defendant in error, Maggie G. Rabey, pursuant to said statute, filed her petition in this cause, making plaintiffs in error, Frank Wright and wife, and Martha Hargrove, the widow, and Mary Frances Hargrove, infant child and sole heir of Legare Hargrove, deceased, defendants thereto, in which the petitioner sets out her ownership of a certain lot of land, containing 3 3-20 acres, more or less, its location and the sources of her title thereto; the boundaries of her said land, the ownership of the lands of the defendants adjoining hers, and then sets forth that the part of the southern boundary line of her land which divides it and the land of the said defendant, Frank Wright, and the whole of the western boundary which divides her land and the land of said defendant, Mary Frances Hargrove, remains undefined and is undetermined and indefinite, and praying that said disputed, undetermined and unascertained lines might be ascertained and designated by the court as between petitioner and her mentioned coterminous land owners, according to the provisions of said statute.

The defendants, Frank Wright and wife, appeared and filed a lengthy answer in writing to said petition, which upon the motion of the petitioner the court struck out and ordered a designated surveyor to go upon the lands of the litigants in the cause and make a physical survey of the

boundary line between them as shown by the records contained in the clerk's office of the Circuit Court of Nansemond county, and after prescribed notice to the adjoining land owners, to make a plat showing the same in their true position as regards the adjacent or adjoining lands, and to return such plat to the clerk of the court on or before a designated date, all of which was done. Whereupon, the defendants, Frank Wright and wife, tendered their pleas Nos. 1, 2 and 3, and upon issue joined on said pleas Nos. 1 and 2, No. 3 having been rejected by the court on the motion of the plaintiff, the cause was tried before a jury, resulting in a verdict in favor of the plaintiff and designating the true boundary line between the parties to be as specifically set forth in the verdict, which verdict the court refused to set aside, and entered judgment thereon to the effect that the boundary line between the lands of the parties to this cause should henceforth be as ascertained and fixed by the verdict of the jury, and be binding upon the parties to this proceeding and their heirs, devisees and assigns, to which judgment Frank Wright and wife obtained this writ of error.

The first assignment of error is to the ruling of the court striking out the answer filed by plaintiffs in error to the petition of defendant in error. It is contended that because the defendant in error had incorporated two issues in her petition, the claimed location of her southern line and the claimed location of her western line, a plea which by the rules of pleading directed the court's attention to a single point is not suited to a defense to the petition, but the defense should be set up by way of answer as though the proceeding was in equity.

This contention is not only without merit but is wholly inconsistent with a further contention made by plaintiffs in error, viz., that this in fact is merely an action of ejectment to try title to and recover from plaintiff in error,

112

Frank Wright, possession of a small tract of land containing (exclusive of a certain railroad right of way) about 1½ acres. The record plainly shows that the proceeding is purely and solely one pursuant to the statute, *supra,* which provides in express terms, (1) that the remedy shall be "upon petition filed," etc.; (2) that the petition "shall be matured for hearing as provided for maturing an action of ejectment, except that it shall not be necessary to serve a copy of the petition," and (3) that "the trial shall be conducted as in other actions at law."

It is to be observed that the second provision of the statute expressly prescribes the procedure of a defendant after the filing of the petition, in that it expressly adopts, in substance, at this stage of the proceeding the pleading prescribed in an action of ejectment for the defendant. The title of the act is "to authorize the ascertainment and designation of the boundary lines of real estate," and it was clearly within the contemplation of the legislature that just such conditions as those presented in the petition of defendant in error presented in this cause might exist, and to provide a summary method and a proceeding by which such disputes might be settled and determined without having a great deal of technical formality about it and the true boundary line or lines between coterminous land owners or claimants designated, the determination of the dispute to be by trial before a jury, or the judge of the court where trial by jury is waived by the parties to the controversy, and upon issue or issues joined between them as in other actions at law.

It may be conceded that plaintiffs in error, defendants below, had the right to file the answer they tendered in this cause, yet the refusal of the court to permit the answer to be filed was not at all prejudicial, since the matters set up therein, which were not mere conclusions of law relied on by way of defense, could have been and were, as far

as proper to be permitted, set up under the issues made by the pleas they were allowed to file in the cause and upon which issue was joined and the trial had.

The second assignment of error calls in question the ruling of the court rejecting plaintiffs in error's plea No. 3. Pleas numbered 1 and 2 which were permitted to be filed and upon which issue was joined set up, in substance, every thing and matter contained in plea No. 3, differing only in language, and therefore the court did not err in rejecting this additional plea, and no possible harm could have resulted to plaintiffs in error or advantage to defendant in error by its rejection.

Defendant in error in her petition set forth concisely her contention as to the location of the true boundary line between her real estate and that of the plaintiff in error, Frank Wright, and in support of this averment she offered in evidence a deed from one Alexander Moore and wife to James Hargrove for the land now owned by Mary Frances Hargrove, another of petitioner's coterminous land owners and a defendant in this cause, and also the plats and notes of survey of the land conveyed in said deed made by one Brewer, surveyor of Nansemond county, which deed conveyed by metes and bounds (identical with those of the Brewer plat) lands adjacent to and coterminous with that of defendant in error mentioned in her petition; and the ruling of the court allowing the introduction of said deed and plat is made the basis of plaintiffs in error's third assignment of error.

The complaint of this ruling is directed mainly to the introduction in evidence of the plat and notes of the said Brewer survey. To show the relevancy and admissibility of said deed, plat and notes of survey would involve a review of a great number of muniments of title introduced in evidence by the respective parties, and to do so would needlessly prolong this opinion. Suffice it to say that an

examination of the various deeds and other muniments of title introduced in evidence, when considered in connection with the averments in the petition filed by defendant in error and the oral testimony introduced under issues joined on the plea in the cause, we are of opinion that there is no merit in this assignment of error.

Assignment of error No. 4 is, as counsel for defendant in error contend, but a corollary of assignment No. 3, and relates to the ruling of the court refusing to exclude from the evidence certain plats. Defendant in error introduced Richard Brinkley, the surveyor appointed by the court to make the survey above mentioned, and George Neurney, who assisted him in making the survey, as witnesses, and through these witnesses introduced two plats made by them, marked "Plot No. 1" and "Plot No. 2," they explaining said plats, how a certain heavy red line "A, B, C," shown on plat No. 2 had been arrived at, and stating that this was run upon the best information they had been able to obtain, and which showed the northern line of the land of plaintiff in error, Frank Wright (the line here in dispute), formerly what was E. Laycock's land; whereupon plaintiffs in error moved the court to exclude from the jury both of said plats and all the testimony given by the witnesses Brinkley and Neurney, which motion the court properly overruled.

We are of opinion also that the court rightly overruled the motion of plaintiffs in error to exclude from the evidence in the cause a deed executed by one E. F. Williamson to James Hargrove. The boundary calls of this deed were for the lands of James Hargrove, E. F. Williamson and the Craney Island road, and it seems impossible for the land therein conveyed to have been bounded by any other lands of E. F. Williamson than that derived from him and now owned by defendant in error. It was the dividing line between the land conveyed by this deed that the de-

fendant in error sought to have ascertained and designated when she made Mary Frances Hargrove, the owner of the lands formerly belonging to James Hargrove, a party defendant to her petition, and the verdict of the jury did ascertain and designate this boundary line. Whether this deed would have been admissible in evidence had Mary Frances Hargrove interposed an objection to its introduction, we are not called upon to decide. Certain it is that plaintiffs in error could not possibly have been prejudiced by its admission, since it was not introduced in any wise to show a boundary line between them and defendant in error.

The action of the court in refusing to instruct the jury that the deed from J. W. Ames, commissioner of the court in a prior suit of *Hartman & Whitehill* v. *Williamson's Admr.*, of date February 28, 1890, conveying to Willis Howell the 3 3-20 acres of land now claimed by defendant in error, offered in evidence by the latter, was void as a conveyance of the land described therein and therefore could be considered only as giving color of title; and also the rejection by the court of certain reports, decrees and orders in said chancery cause, and certain oral testimony offered by plaintiff in error, Wright, in support of his motion to so instruct the jury, is assigned as error.

Whatever the circumstances under which said deed was executed and whatever effect it might have had as concerned the parties to the suit pursuant to the decrees in which the deed purported to have been made, it was not open to collateral attack by strangers to that suit.

"Whenever deeds or grants conveying adjacent land tend to identify and fix a disputed boundary, the general rule is that they are admissible in evidence." *Hamman* v. *Miller*, 116 Va. 873, 83 S. E. 382.

The seventh and eighth assignments of error relate to the action of the court in refusing four instructions asked

by plaintiffs in error and the giving of its own instruction in lieu of all other instructions asked by either party—that is to say, the court refused all instructions offered by the plaintiffs in error as well as those offered by defendant in error, and gave its own instruction, intending by it to cover the entire case that the evidence tended to prove, leaving to the jury the determination of the weight, credibility and sufficiency of the evidence given in support of the contentions of the respective parties.

The evidence offered in the case consisted not only of the testimony given by a large number of witnesses introduced on behalf of the respective parties, but of a mass of documentary evidence, and the instruction given by the court, which is set out in the statement of the case, told the jury, in effect, and rightly, that the proceeding was pursuant to the statute, *supra,* providing a summary method by which disputes between coterminous land owners as to boundary lines may be determined by the court or a jury without having a great deal of technical formality about it, and that it was for them to consider the evidence in the case and upon it to determine the true boundary line between the parties to the controversy. This instruction, we think, fairly submitted the case to the jury, and in fact as favorably if not more favorably to plaintiffs in error than the instruction they themselves asked.

The remaining assignment of error is to the refusal of the court to set aside the verdict of the jury on the ground that it is contrary to the law and the evidence.

As we have seen, the case was submitted fairly to the jury by the court's instruction to determine the weight, credibility and sufficiency of the evidence given in support of the contentions of the respective parties, and upon the evidence, which is conflicting and confused, the jury has rendered a verdict that sustains the contention of defend-

ant in error as to the true location of the boundary line between her lands and that of plaintiffs in error, which verdict the trial judge has approved. This court is of opinion that there is no error in the judgment of the circuit court, and that it should be affirmed.

*Affirmed.*