## Richmond.

## BRADSHAW V. BOOTH.

January 20, 1921.

1.  BOUNDARIES.—*Proceedings to Determine—Evidence—Judgment in Action of Trespass.*—In a proceeding under Acts 1912, p. 133, to fix boundaries, it was shown by the evidence that defendant was in actual possession of the two parcels of land in controversy at the time of the institution of the proceeding. The trial court refused to permit defendant to introduce in evidence the record of an action of trespass in which defendant sued plaintiff, alleging trespass committed on the two parcels of land, and recovered a verdict and judgment. The defendant was allowed to testify that such action was instituted by him with such result, and he was entitled to introduce the record in corroboration. But if the record had been admitted, it would have established nothing more than the fact that defendant was at the time of the institution of the action of trespass either in or entitled to the possession of the parcels of land concerned. As the title was not in issue in the action of trespass, the record was inadmissible in the instant case on the issue of title, except upon the claim of title by the defendant by adverse possession.

2.  BOUNDARIES.—*Proceedings to Determine—Evidence—Judgment in Action of Trespass—Adverse Possession.*—The exclusion of the record in an action of trespass wherein defendant recovered judgment against plaintiff for a trespass upon the land in controversy in a proceeding to determine boundaries under Acts 1912, p. 133, is harmless, where, although defendant introduced testimony to the effect that he claimed title to the land in controversy by adverse possession, there was no evidence for defendant tending to show such adverse possession for the statutory period.

3.  APPEAL AND ERROR.—*Objection for the First Time on Appeal—Proceedings to Determine Boundaries—Failure to Plead Statute of Limitations.*—In a proceeding to fix the boundaries of lands under Acts 1912, p. 133, plaintiff contended that as the defendant pleaded only the general issue and did not plead

the statute of limitations specially, no evidence of adverse possession was admissible in behalf of the defendant.

*Held:* That as no objection was made in the court below to the admission of the evidence on the ground of the lack of such pleading, the question could not be raised for the first time on appeal. Moreover, as, in the instant case, the exclusion of the evidence was sustained on other grounds, it was unnecessary to determine the question.

4. BOUNDARIES.—*Statutory Proceedings to Determine—Limitation of Actions.*—Under a plea of the statute of limitations, adverse possession is a defense which may be made in the statutory proceedings to fix boundaries under Acts 1912, p. 133. But whether the statute of limitations must or need not be pleaded in order to admit the defense is not determined in the instant case.

5. BOUNDARIES.—*Proceedings to Determine—Plaintiff's Title.*—When plaintiff has never had actual or constructive possession of any part of the land in controversy in a proceeding under Acts 1912, p. 133, to determine boundaries, he must show a complete legal title to the premises in order to recover. If plaintiff had had a prior possession to that of the defendant and the possession of the latter had been obtained by intrusion and trespass without color of title, such prior possession would have raised a presumption of title in the plaintiff which would have been sufficient to show a complete legal title to the premises in him.

6. ACTIONS.—*Actions to Recover Property—Plaintiff Must Rely on Strength of His Own Title.*—The maxim that the plaintiff must recover on the strength of his own title, and not on the weakness of the defendant's, is applicable to all actions for the recovery of property.

7. BOUNDARIES.—*Proceedings to Determine—Nature of the Proceeding.*—The proceeding to settle and determine boundaries under Acts 1912, p. 133, is an action for the recovery of property.

8. BOUNDARIES.—*Proceedings to Determine—Instructions.*—In a proceeding under Acts 1912, p. 133, to determine boundaries, the refusal to instruct the jury that plaintiff must prove a complete legal title to the premises and the right to the possession thereof before he could recover, accompanied by an instruction that the jury were to determine the true line from all the evidence in the case, was prejudicial to the defendant as to a parcel of land as to which there was no evidence of title in the plaintiff whatsoever in the record, because the jury were left wholly without guidance on the subject and free to fix the location of the line without any evidence of title.

9. BOUNDARIES.—*Description in Deeds—Parol Evidence.*—Plaintiff, claiming title by deeds, must rely upon such deeds to define specifically the boundaries of his claim. Extrinsic evidence is admissible to locate on the ground the boundaries thus designated in a general description thereof, so as to identify the land conveyed, and deeds or grants conveying adjacent lands referred to in such general description and extrinsic evidence applying the boundaries therein designated to their proper subject-matter are also admissible in evidence.

10. DECLARATIONS AND ADMISSIONS.—*Declarations Against Interest—Boundaries.*—The declarations of landowners made during the time of their ownership, which are adverse to their interest, and even general reputation on the subject, are admissible in evidence as tending to show the location of boundaries designated by grants, deeds or wills. But such declarations and general repute, to be admissible in evidence, must have reference to monuments or other delineation on the ground of the extent of the boundaries designated in some evidence of title.

11. BOUNDARIES.—*Parol Evidence.*—The extent of boundaries of land, and thus the title to land, cannot be established wholly by parol evidence, unsupported by written evidence of title, where title by adverse possession is not involved, and where the case is one in which the title claimed is by deed and must have been derived by deed, if derived at all; for to hold otherwise would be to permit parol evidence to become an independent source of title, which by the weight of authority, and certainly in Virginia, is not permissible.

12. BOUNDARIES.—*Proceedings to Determine—Proof of Title—Ejectment.*—In a proceeding under Acts 1912, p. 133, to determine boundaries, the same principles are inevitably involved as are involved on the same subject in actions of ejectment. Where the plaintiff to recover relies on title to land up to a certain location of its boundary on the ground, although the defendant may in general terms admit by the pleadings that the plaintiff has title to some land claimed by the latter, yet when the defendant denies that the plaintiff's title extends to such location, the plaintiff is inescapably put to his proof of such a title, by evidence of title which the defendant cannot be heard to dispute; and such evidence must trace the title either from the Commonwealth or other common grantor.

13. APPEAL AND ERROR.—*Harmless Error—Boundaries—Instruction as to Plaintiff's Title.*—In a proceeding to determine boundaries under Acts 1912, p. 133, the refusal to instruct the jury that the plaintiff must show a complete legal title to the land in controversy, accompanied by an instruction that the jury

were to determine the true line from all the evidence in the case, was harmless as to the parcel of land in dispute as to which there was evidence in the case of title in the plaintiff defining the boundary.

14. BOUNDARIES.—*Instructions—Burden Upon Plaintiff.*—In a proceeding to determine the boundaries of lands under Acts 1912, p. 133, the refusal of an instruction that plaintiff could not recover by showing a conflict of claims between himself and defendant, but must show that his claim to the premises is positive, valid, and complete, was error and harmful as to a parcel of land as to which there was no evidence as to plaintiff's title, but harmless as to another parcel as to which there was evidence of title in the plaintiff defining the boundary.

15. INSTRUCTIONS.—*Undue Emphasis—Inaccuracy.*—It is not error to refuse instructions containing expressions which were not entirely accurate, as applicable to the evidence in the case, and which moreover merely elaborated propositions of law enunciated in other instructions, and the giving of which would have unduly emphasized this subject before the jury.

16. BOUNDARIES.—*Estoppel—Acquiescence of Party in Survey.*—The mere acquiescence of plaintiff in a survey by defendant of the land in controversy in a proceeding under Acts 1912, p. 133, to determine boundaries, at the time of the purchase of the real estate by defendant, does not estop plaintiff from afterwards asserting an adverse claim of title inconsistent with the validity of the survey in the accuracy of which he had acquiesced. Such mere acquiescence alone will not work an estoppel. In order to do so the acquiescence must have influenced the subsequent conduct of the defendant to his prejudice.

17. BOUNDARIES.—*Parol Agreement.*—No mere parol agreement to establish a boundary, and thus exclude from the operation of a deed land embraced therein, can divest, change or affect the legal rights of the parties growing out of the deed itself.

18. BOUNDARIES.—*Parol Agreement—Admissibility in Evidence.*—In a proceeding to determine boundaries under Acts 1912, p. 133, a parol agreement between the parties touching the location of the boundary lines in controversy was proper evidence for the consideration of the jury on the subject of the true location on the ground of the boundary lines, in so far as such boundaries were designated in the evidence of title in evidence, but such agreement could not establish title.

Error to a judgment of the Circuit Court of Prince Ed-

ward county in a proceeding to determine boundaries. Judgment for plaintiff. Defendant assigns error.

*Reversed in part and remanded.*

This is a proceeding, by petition, under the act of Assembly 1912, p. 133, instituted by the defendant in error against the plaintiff in error. The parties will be hereinafter referred to in accordance with their positions of plaintiff and defendant in the court below.

The relief sought by the petition is to have the court ascertain and designate the true boundary lines between the lands which are alleged to be owned by the respective parties.

The proceeding was commenced by notice of motion to be made at term under the statute. The notice was duly served upon the defendant and the petition was accordingly filed at term, together with a plat, referred to therein and filed therewith, showing the location as claimed by the plaintiff of the boundary lines in controversy. The defendant pleaded the general issue only of "not guilty." At a subsequent term, to which the case was continued, issue was joined upon such plea and there was a trial by jury which resulted in the following verdict: "We, the jury, find for the plaintiff in this petition and fix the boundary line as run by J. W. Overton and continuing on to the maple in the ice pond in accordance with the plat filed with the petition." The court below entered judgment accordingly and the defendant brings error.

The land alleged to be owned by the plaintiff consists of a tract of fifty acres conveyed to him by deed from Johnson Booker of date October 17, 1900, which contains only the following designation of the location of the boundary lines in so far as they are involved in the controversy in this case, namely: "Joining W. R. Harper and George Wright on the east * * *." This land, included in a larger tract, was con-

veyed to Johnson Booker by deed from George F. Bruce, dated July 24, 1886, which contains only the following designation of the location of the boundary lines in controversy as aforesaid, namely: "Joins the lands of Beasley * * *."

The plaintiff introduced no other title papers in evidence.

It appears in evidence that the references in the two deeds aforesaid in the chain of title of the plaintiff to the George Wright land and to the Beasley land are to one and the same tract of land, namely, to a tract of 17¾ acres, which will be hereinafter referred to as defendant's Beasley land, which was conveyed by the said George F. Bruce and wife to Albert Beasley by deed dated December 20, 1873, which deed contains only the following designation of the location of the boundary line of it in controversy in this case, to-wit: "Is bounded by Ponton * * * and left of Ellington's Mill road." This land, included in a larger tract, was conveyed by Albert Beasley's heirs to John Brandau by a deed which gives no location of the boundaries. Brandau conveyed this land, included in such larger tract, to the defendant, by deed dated November 28, 1907, which contains only the following designation of its location of the boundary line of it in controversy in this case, to-wit: "Bounded on the * * * west by lands of Isham Booth."

It appears in evidence that the reference in the Johnson Booker deed to the plaintiff aforesaid, to the W. R. Harper land is to the same land which is referred to in the quotation in the paragraph next above as the "Ponton" land, which will be hereinafter referred to as defendants Ponton land, and which was conveyed by J. W. Ponton and wife to Mrs. Maggie A. Wells by deed dated September 21, 1899, which contains only the following designation of the location of the boundary line of it in controversy, namely: "Bounded by the lands of Johnson Booker * * * being the same land inherited by said J. W. Ponton of his father the late John Ponton * * *"; and by Mrs. Maggie A. Wells

conveyed to Mrs. Camilla O. Harper (whose husband was
W. R. Harper), by deed dated June 12, 1902, which contains
only the following designation of the location of the boun-
dary line of it in controversy, namely: "———— by the
land of Johnson Booker * * *"; and by Mrs. Camilla O.
Harper and W. R. Harper, her husband, conveyed to the
defendant by deed dated March 25, 1905, by metes and
bounds per survey and plat made by J. P. Dahlborn, sur-
veyor, on March 17, 1905, in accordance with which the
location of the boundary line of this land coterminous with
that of the plaintiff is given by courses and distances.

The boundary lines in controversy are those between the
plaintiff's land and the defendant's Beasley land and de-
fendant's Ponton land; the two latter tracts being both
adjacent to each other and lying along the eastern side of
the plaintiff's land, the Beasley tract along the northern and
the Ponton tract along the southern portion of the lines of
the plaintiff's land. This will more plainly appear from
the following diagram, which is not precisely the same as
any of the plats introduced in evidence, but is made by using
parts of such plats:

The line indicated by dashes, "a b B" is the Ellington Mill
road as in use at the time this action was instituted. The
line "A B" as similarly indicated, is the Ellington Mill road
as it was located and in use on December 20, 1873, the date
of the deed from Geo. F. Bruce and wife to Albert Beasley,
above mentioned, as testified to by witnesses for the plain-
tiff. The line "A B C D" is the line claimed by the plain-
tiff and fixed upon by the verdict and judgment aforesaid.
The line "a b B C E" is the line claimed by the defendant.
The land in controversy is altogether something less than
two acres and is in two parcels, one parcel within the lines
"a b B A" and the other within the lines "C D E"—all as
shown on the diagram.

4

The record contains the following statement: "It was agreed between plaintiff and defendant that so far as the

*Diagram*

land in dispute originally belonged to Mr. George F. Bruce, that both plaintiff and defendant claimed from a common grantor in the person of Geo. F. Bruce, and no further

deeds were necessary in tracing the title of both parcels of Bruce land back to a common grantor." This applies only to land within the lines "a b B A." No common grantor is shown by the evidence of the land within the lines "C D E."

As shown by the evidence, neither of the parcels of land were at any time inclosed by a fence by either the plaintiff or defendant, or, so far as the record discloses, by their predecessors in title, except that a witness for the defendant testified at the trial in May, 1919, in substance, that he "had been knowing the old Ellington Mill road for forty or fifty years and that the old road is in the same place now it was when he first traveled it; that the old fence ran along the road and curved as the road did and that Mr. Albert Beasley claimed the road to be the line and used the field adjoining as a pasture up to the road;" and there were a number of other witnesses for defendant who testified in substance that a fence was built by Albert Beasley along the east side of this road "a b B," curving as the road curved. But there is no evidence that this fence constituted or was kept up as an enclosure of the land in controversy in that locality for any continuous period of fifteen years.

It further appears in evidence that the parcel of land "a b B A" was "in woods," in its wild, uncleared, uncultivated condition, completely in a state of nature, until 1912, when the defendant cleared this strip of land "in three distinct places" up to the Ellington Mill road as now located, along the line "a b B" shown on the above diagram, "and has cultivated said land up to said road since that time;" and that the parcel of land "C D E" was "in woods," in the same condition aforesaid as was the "a b B A" parcel of land prior to 1912, until 1911 when defendant, through an employee, "first undertook * * * the clearing and cleaning" of it up to the line "B C E," and that only "since that time has (the defendant) cultivated the land up to" (that line).

There is no testimony in the case tending to show that the plaintiff or his predecessors in title ever exercised any acts of ownership over the parcel of land "C D E" which could amount even to acts of trespass. The only specific acts of ownership on the parcel of land "a b B A" which the plaintiff introduced any testimony tending to prove, were, that about twelve years before the trial in the court below he sold one John W. Olgers two oak trees on that parcel of land; although the plaintiff himself testifies that "he did not limit his use of" (the two parcels of land in controversy) "merely to the sale of trees to John W. Olgers, but * * * had owned, used and claimed the land up to the line as indicated by the Overton survey" (the line A B C D) "since his purchase." The only specific acts of ownership of the plaintiff, other than the sale of trees to Olgers aforesaid, appear from the testimony for the defendant concerning a prior controversy involved in an action of trespass. These acts of ownership and the result of such action, are shown by the following extract from the testimony of the defendant:

"The witness" (the defendant) "furthermore stated that two or three years ago" (other evidence in the case however shows that this was in 1914) "for some unknown reason to him, the plaintiff went to this red oak tree" (the line tree at the point "C" as shown on the diagram above) "and cut it down and that the controversy arose between the plaintiff and defendant from that time; that this red oak tree was plainly marked as a center line tree with surveyor's chops, and that as soon as he heard of this tree being cut down he confronted plaintiff with its cutting and that plaintiff admitted having cut it in the presence of several other witnesses; that plaintiff also on or about the same time cut and removed * * * some other wood and trees that were located along the Beasley line and on" (the land "a b B A" in controversy) * * *. Defendant testified

that he remonstrated with plaintiff about this cutting and being unable to get any satisfaction he brought suit against him for damages and that he recovered a verdict and judgment for damages against plaintiff in the circuit court of Prince Edward county"—being the same court as that in which the instant case was tried.

There is no evidence in the case tending to show that either the plaintiff or defendant had at the time of the institution of the action in the instant case any title or color of title other than that given by the deeds aforesaid.

It appears from the evidence that by the phrase "*left* of Ellington's Mill road" used in the deed aforesaid of December 20, 1873, from Geo. F. Bruce and wife to Albert Beasley, was meant "*east* of Ellington's Mill road."

It further appears from the evidence that the true location of the dividing line between the land of the plaintiff and the defendant's Beasley land according to the deeds in the chains of title of both plaintiff and defendant as such title was derived from their common grantor Bruce, as aforesaid, depends upon the location of the Ellington's Mill road at the time of the deed to Albert Beasley next above mentioned. The testimony for the plaintiff is to the effect that this road was at that time in a straight line from "A" to "B" as shown by the dashed line "A B" on said diagram; that Albert Beasley following this deed built his fence along the east side of this road, located as shown by the solid line from "A" to "B" on said diagram. That in 1902 one J. W. Overton, a surveyor, surveyed and located this line from "A" to "B" as a straight line, as shown on said diagram; that he then found remains of said fence and a white oak tree marked as a line tree along this line. And the plaintiff claims in his testimony, and by that of a number of witnesses introduced in his behalf, that this is the true location on the ground of the line from "A" to "B" as designated in said deed to Albert Beasley and hence in the deeds

in the chain of title of both plaintiff and defendant afore-
said. There is, however, a conflict of testimony on this sub-
ject. The defendant and a number of his witnesses testify,
in substance, that the Ellington's Mill road was located at
the time of the deed to Albert Beasley along the line "a b
B" as shown on said diagram; that Albert Beasley built
his fence on a curve along the east side of this road as then
located.

As to the dividing line between the land of plaintiff and
the defendant's Ponton land, none of the deeds in evidence
designate any definite location of this line, except the deed
from the Harpers of date March 25, 1905, to the defendant.
But this was less than fifteen years prior to the institution
of this action, so that the defendant could not derive title
by constructive adversary possession under this deed as
color of title, even if he had had the requisite continuous
possession of the residue of the tract, of which there is no
evidence in the case. And as the parties do not appear to
have derived title to the Ponton land and that portion of
the plaintiff's land adjacent thereto from a common gran-
tor, the plaintiff is not bound by and he disputes the accu-
racy of the designation of metes and bounds contained in
such deed. This deed gives the line just mentioned as a
broken line. According to the evidence in the case the line
as given by this deed coincides from "B" to "C," as shown
on said diagram, with this line as fixed by the verdict and
judgment aforesaid, or that, at least, the line so fixed is not
located farther east than is the line as designated in such
deed, if indeed it is so far east. But at "C," as shown on
the said diagram, the line of such deed diverges at an in-
creased angle of ten degrees to the southwest, along the line
"C E" as shown on the diagram. As to whether the former
or the latter line is the true line neither the plaintiff nor the
defendant furnish any evidence of title which is binding
upon the other—since neither admits the validity of the

deeds of the other as evidence of title, nor do either, as aforesaid, as to the land in controversy in that locality, trace title to the Commonwealth or to other common grantor. They each deny that the other has any title to the land embraced within the conflicting boundaries "C D E." And the testimony both for plaintiff and defendant on this subject consists of the conflicting statements of witnesses to the effect that they knew and were familiar with the line, some of them stating such knowledge and familiarity as having existed for a great number of years—from childhood in the cases of some witnesses, who were quite old—but none of the witnesses on either side had any knowledge of any deed or other evidence of title, back of the Harper deed aforesaid, or purported to base the location of the line to which they testified upon the designation of the location thereof in any deed or other evidence of title, except that there was testimony for the defendant tending to show the location on the ground of the boundary lines designated in the Harper deed as aforesaid. One of plaintiff's witnesses testifies that "during the time when Ponton owned the land now owned by Bradshaw * * * Ponton showed the line and told him (witness) that it was a straight line from the oak" ("C" on the above diagram) "to three maples" ("D" on the diagram) "in the middle of the head of the pond;" but this witness does not testify that Ponton referred to any deed or other evidence of title as designating such location of the line, nor is there any evidence in the case tending to show the existence of any such evidence of title.

There is also parol evidence in the case for the defendant tending to show that the plaintiff was present at the time the survey was made according to which the Harper deed was afterwards drawn and executed, and that the plaintiff acquiesced in such survey at the time and agreed that the line should be so established.

There is also parol testimony for the plaintiff tending to show that the defendant at one time verbally agreed with

the plaintiff that the lines in controversy should be established as claimed by the plaintiff and afterwards fixed by said verdict and judgment.

There was also parol testimony for the plaintiff tending to show that Brandau, a predecessor in title of the defendant, as owner of the Beasley land, was sent for and was present when Overton, the surveyor, ran the line "A B" and "agreed" to that line. This was in 1902 before Brandau obtained his deed above mentioned; but he might have purchased the Beasley land as early as 1902. The evidence, however, is silent as to this.

Other evidence in the case and certain positions of the parties will be referred to in the opinion below.

*J. Taylor Thompson,* for the plaintiff in error.

*Watkins & Brock* and *W. Moncure Gravatt,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

[1, 2] 1. It is shown by the evidence in the case that the defendant was in actual possession of the two parcels of land in controversy at the time of the institution of the action; and the defendant's first assignment of error is taken to the action of the trial court in refusing to permit him to introduce in evidence the record of an action of trespass in which, according to the parol evidence in the instant case, the defendant in 1917 sued the plaintiff in the instant case alleging trespass committed on said two parcels of land in 1914 and recovered a verdict and judgment. Such verdict and judgment conclusively established the fact as between these parties that the defendant in the instant case was either in, or entitled to the possession of such parcels of

land at the time that action was instituted, and the trial court was in error in refusing to admit such record as evidence on that subject. The defendant was allowed to testify that such action was instituted by him with such result and he was entitled to introduce the record in corroboration of his verbal statement. But if such record had been admitted in evidence it would have established nothing more than the fact that defendant was, in 1914, either in or entitled to the possession of the parcels of land mentioned. The title of the respective parties was not in issue in the action of trespass and was not adjudicated by the judgment therein. The record aforesaid was therefore inadmissible in the instant case on the issue of title involved therein, except upon the claim of title by the defendant by adverse possession. 2 Black on Judgments (2nd ed.), sections 506, 769; 23 Cyc. p. 1532. The defendant did introduce testimony to the effect that he claimed title to both parcels of land in controversy by adverse possession; but the utmost that could be said in favor of such testimony is that it showed such possession of one of the parcels of land involved in the action for eight years and of the other for seven years only, next preceding the institution of the action in the instant case, which included the possession aforesaid in 1914. There was no evidence for defendant even tending to show such adverse possession for a longer period of time. The record in question, therefore, if it had been admitted in evidence upon the issue of adverse possession of the defendant, would have been unavailing. Hence the error of the court below in not admitting it in evidence was harmless.

[3, 4] The position is taken in the brief and argument before us for the plaintiff, to the effect that, as the defendant pleaded only the general issue and did not plead the statute of limitations specially, no evidence of adverse possession was admissible in behalf of the defendant and, therefore,

the trial court committed no error in refusing to admit said record as evidence. As to this we may say, in the first place, that the question of whether the statute of limitations must be pleaded specially, in order to be relied on in such a proceeding as this, is not presented to us for decision by the record before us, since it does not appear that the lack of such pleading was the objection to such evidence which was made in the court below; and testimony to the same effect and other testimony on the subject of adverse possession was repeatedly introduced by the defendant and admitted by the court without objection on the part of the plaintiff and without motion at any time to exclude it. Secondly, the disposition we have made above of this subject renders it unnecessary for us to here decide whether it is necessary in a proceeding such as that before us for the statute of limitations to be specially pleaded in order to render evidence of adverse possession admissible.

We feel that we should say, however, in this connection the following: It is urged in behalf of the plaintiff that we decided in the case of *Christian* v. *Bulbeck*, 120 Va. 74, 90 S. E. 661, in what is said at p. 82 of 120 Va., at p. 663 of 90 S. E., that adverse possession is a defense which can be made in the statutory proceedings such as is the instant case, only under a plea of the statute of limitations. The issue in that case was whether such defense could be made at all in such a proceeding. We held that certainly under a plea of the statute of limitations adverse possession is a defense which may be made in such a proceeding. We there left undecided whether such plea is or is not necessary in such a proceeding in order to admit the defense of adverse possession. It is well settled that such plea is not necessary in an action of ejectment and that adverse possession is a defense which can be made in that form of action under the general issue. *James River, etc., R. Co.* v. *Robinson,* 16 Gratt. (57 Va.) 434; *Reynolds* v. *Cook,* 83 Va. 817, 3 S. E.

710, 5 Am. St. Rep. 317; Burks' Pl. & Pr., sec. 122, p. 206. But this subject may be said to be regulated, in part at least, in actions of ejectment by the provisions of the statute. Code 1919, sec. 5463. But see *Wright* v. *Rabey,* 117 Va. 884, 890, 86 S. E. 71. We, however, also here leave undecided, because not necessary for the decision of this case, the question of whether in a proceeding such as this, under the statute, Acts 1912, p. 133 *et seq.,* the statute of limitations must or need not be pleaded in order to admit the defense aforesaid thereunder:

[5] The following questions, which are presented by the record before us for our decision, will be passed upon in their order as stated below:

3. Was it error in the trial court to refuse to give the following instruction asked for by the defendant, namely:

"(1) The court instructs the jury that the burden in this case is upon the plaintiff, Booth, to prove to the satisfaction of the jury that he had a complete legal title to the premises claimed by him, and the right to the possession thereof at the institution of this suit, before he can recover and that he must recover, if at all, on the strength of his own title and cannot rely on any weakness of the title of the defendant, and that in order to recover he must prove affirmatively that he is entitled to the premises, and that the defendant is not entitled, before recovery can be had;"

And in giving only the following instruction to the jury, namely:

"The jury are instructed that the question before them is the location of the true boundary line between the lands of plaintiff, Isham Booth, and the lands of the defendant, John W. Bradshaw, and they are to determine that from all the evidence in this case; and if from the evidence they can determine the true line, they should describe that line as accurately as possible, indicating the same by reference to any plats or surveys offered in evidence, or otherwise as may be proper?"

This question must be answered in the affirmative.

[6, 7]   Certainly when, as in this case, the plaintiff has never had actual or constructive possession of any part of the land in controversy, he must show a complete legal title to the premises in order to recover. If he had had a prior possession to that of the defendant and the possession of the latter had been obtained by intrusion and trespass without color of title, such prior possession would have raised a presumption of title in the plaintiff which would have been sufficient to show a complete legal title to the premises in him.   *Rhule* v. *Seaboard Air Line Ry. Co.,* 102 Va. 343, 46 S. E. 331.   Such a situation is sometimes stated by the authorities to constitute an exception to the long and well established rule of law which is laid down by the authorities as follows: "* * * A party must recover on the strength of his own title and not on the weakness of his adversary's title.   If it appear that the legal title is in another, whether that other be the defendant, the Commonwealth, or some third person, it is sufficient to defeat the plaintiff."   5 Encyc. U. S. Sup. Ct. Rep., pp. 699, 700.   As appears from a consideration of the authorities, the situation mentioned is not really an exception to the rule stated, because in such case the presumption aforesaid supplies the needed proof that the legal title is in the plaintiff.   See authorities cited on this subject in note to 1 Va. Law. Reg., p. 278 *et seq.* There are also other exceptions to the rule (see *Suttle* v. *R. F. & P. R. Co.,* 76 Va. 284), which also would seem to be more apparent than real. But, however that may be, none of such exceptions embrace the instant case, and in a case such as that before us, where the plaintiff has never had any actual or constructive possession of any part of the land in controversy the rule above referred to is unquestionably applicable.   None of the acts relied on by the plaintiff to evidence possession amount to anything more than a trespass on the land in controversy.   And there is no evidence in the cause even tending to show that the

plaintiff was entitled to any part of the land in controversy by adverse possession. As said by the Supreme Court in the case of *Christy* v. *Scott*, 14 How. 282, 292, 14 L. Ed. 422, 426: "The maxim that the plaintiff must recover on the strength of his own title, and not on the weakness of the defendant's, is applicable to all actions for the recovery of property." The proceeding before us is an action for the recovery of property, since, under the statute (Laws 1912, c. 74) : "The judgment of the court shall, unless re-versed, forever settle and determine and designate the true boundary * * * lines in question and be binding upon the parties to (the) petition, their heirs, devisees and assigns." See *Christian* v. *Bulbeck, supra* (120 Va. 74, 90 S. E. 661).

[8-11] (a) The refusal to give the instruction first and the giving of the instruction second above mentioned was neces-sarily prejudicial to the defendant in so far as the parcel of land "C D E" shown on the above diagram is involved; because the trial court thus left the jury without the aid of any standard fixing what is sufficient evidence of title to real estate. The jury were left wholly without guidance on this subject and free to fix the location of the boundary line "B C D" shown on said diagram without any evidence of title, because as to the parcel of land "C D E" there was no evidence of title in the plaintiff whatsoever in the record. The following, which is said in the opinion of the court in the case of *Grigg* v. *Brown*, 126 Va. 652, 102 S. E. 212, is equally applicable to the instant case, namely: "There being no evidence in the case even tending to show any actual pos-session of any part of the land in controversy by the plain-tiffs or any of their predecessors in title, * * * the plain-tiffs must rely upon their paper title to sustain their claim of ownership of such land." In the instant case there was in fact no evidence before the jury showing title of the plaintiff up to any definite boundary line on the side of the plaintiff's land extending from "B" southward. It is elementary law that the plaintiff in the instant case, claim-

ing title by deeds, must rely upon such deeds to define specifically the boundaries of his claim. *Grigg* v. *Brown, supra.* It is also elementary law that extrinsic evidence is admissible to locate on the ground the boundaries thus designated in a general description thereof, so as to identify the land conveyed, and deeds or grants conveying adjacent lands referred to in such general description and extrinsic evidence applying the boundaries therein designated to their proper subject matter are also admissible in evidence. 5 Cyc. 958, 962; *Overton* v. *Davisson,* 1 Gratt. (42 Va.) 212, 222, 42 Am. Dec. 544; *Reusens* v. *Lawson,* 91 Va. 232, 21 S. E. 347; *Sulphur Mines Co.* v. *Thompson,* 93 Va. 293, 25 S. E. 232. And the declarations of land owners made during the time of their ownership, which are adverse to their interest, and even general reputation on the subject, are admissible in evidence as tending to show the location of boundaries designated by grants, deeds or wills. But such declaration and general repute to be admissible in evidence must have reference to monuments or other delineation on the ground of the extent of the boundaries designated in some evidence of title. *Christian* v. *Bulbeck, supra,* (120 Va. 74, 98, 90 S. E. 661) ; *Grigg* v. *Brown, supra,* (126 Va. 652, 102 S. E. 212). The extent of boundaries of land, and thus the title to land, cannot be established wholly by parol evidence, unsupported by written evidence of title, where title by adverse possession is not involved and where the case is one in which the title claimed is by deed and must have been derived by deed, if derived at all; for to hold otherwise would be to permit parol evidence to become an independent source of title, which by the weight of authority, and certainly in Virginia, is not permissible. *Suttle* v. *R. F. & P. R. R. Co.,* 76 Va. 284.

[12] In short, on the subject we have under consideration the same principles are inevitably involved as are involved on the same subject in actions of ejectment. Where the plaintiff to recover relies on title to land up to a certain

location of its boundary on the ground, although the defend-
ant may in general terms admit by the pleadings that the
plaintiff has title to some land claimed by the latter, yet
when the defendant denies that the plaintiff's title extends to
such location, the plaintiff is inescapably put to his proof of
such a title, by evidence of title which the defendant cannot
be heard to dispute; and such evidence must trace the title
either from the Commonwealth or other common grantor—
the Commonwealth being, of course the original common
grantor under the system of the tenure of lands prevailing
in Virginia. We are of opinion, therefore, that the same
rule which is applicable in such case in an action of eject-
ment is equally applicable in such a proceeding as that in
the instant case.

It is admitted in argument for the plaintiff that in an
ejectment suit involving the same facts as are involved in
the proceeding before us, the established rule is that the
instruction aforesaid which was refused should have been
given.   See as some of the authorities on the subject, *Mc-
Kinney* v. *Daniel,* 90 Va. 702, 19 S. E. 880; *Va. Coal & Iron
Co.* v. *Keystone Coal & Iron Co.,* 101 Va. 730, 45 S. E. 291;
*Carter* v. *Wood,* 103 Va. 68, 48 S. E. 553; *Reusens* v. *Law-
son,* 91 Va. 226, 254, 21 S. E. 347; *Buntin* v. *Danville,* 93
Va. 203, 24 S. E. 830.

[13] (b) The error aforesaid in the action of the trial
court with respect to said instructions was, however, harm-
less in so far as the parcel of land, "a B A" shown on said
diagram, is involved; because there was evidence in the case
of title in the plaintiff defining the boundary of that parcel
of land.   That evidence consisted of the reference in the
deeds, in the plaintiff's chain of title from the common
grantor, to the line of defendant's Beasley land and of the
designation of such line, in the deed from such common
grantor to Albert Beasley in the defendant's chain of title,
as being "left of Ellington's Mill road."   And it was for
the jury to weigh the conflicting evidence as to the location

on the ground of such boundary line. There was sufficient evidence for the plaintiff before the jury to have warranted them in finding the location on the ground of the line "A B" as designated in said evidence of title of the plaintiff. Hence the finding of line "A B" would have been warranted and doubtless it would have been found, just as it was found, if instruction No. (1) asked for by plaintiff had been given and the instruction of the court which was given had not been given. It is manifest from the verdict itself that the jury believed the testimony of the witnesses for the plaintiff on the subject of the location of the Ellington road at the time of the deed to Albert Beasley and disbelieved the conflicting testimony of the witnesses for the defendant on the subject. This concludes such question of fact in favor of the plaintiff. Considering such fact as so determined, the jury, under the evidence of title in the case, could not have properly found any other verdict than that which they did find with respect to the dividing line between the land of the plaintiff and the defendant's Beasley land.

[14] 4. Was it error in the trial court to refuse to give the following instruction asked for by the defendant, namely:

"(2) The court instructs the jury that the plaintiff cannot recover by showing a conflict of claims between himself and the defendant, but he must show affirmatively by a preponderance of the evidence that his claim to the premises is positive, valid and complete, as the possession of the defendant, or those under whom he claims, of the premises claimed, is valid against every one, except a plaintiff proving a superior title?"

For the same reasons stated above in the discussion of the action of the trial court on the other instructions above mentioned, we are of opinion that the action of the court here in question was error; that such error was harmful in so far as the "C D E" parcel of land in controversy is con-

cerned and therefore reversible error; but was harmless and therefore not reversible error in so far as the "a b B A" parcel of land in controversy is concerned.

[15] 5. The assignments of error raise the question as to whether the refusal of two other instructions asked for by the defendant, Nos. (3) and (4) was error.

On this subject it is deemed sufficient to say that there are expressions in these instructions which are not entirely accurate as applicable to the evidence in the instant case. Moreover, they merely elaborate the proposition of law enunciated in instructions Nos. (1) and (2) above quoted, and the giving of additional instructions on this point would have unduly emphasized this subject before the jury. Hence upon another trial of the case, if such is had with respect to the "C D E" parcel of land, the additional instructions Nos. (3) and (4) should not be given.

[16] 6. Was it error in the trial court to refuse to give the following instruction, namely:

"(5) The court instructs the jury that if they believe from the evidence that the plaintiff at the time of the purchase of real estate involved in this controversy in 1905 by the defendant, was given notice, or knew of the survey of said realty as made by or on behalf of the defendant at or about the time of said purchase, and stood by and permitted or acquiesced in such survey, without making known such alleged claim to the purchaser or his representatives, as to any part of said property, and that he furthermore acquiesced in said survey as established at that time, or assented thereto at any time prior to the institution of this action, that he is now estopped from asserting any such adverse claim to any part of said property as shown by said survey in this controversy?"

This question must be answered in the negative.

[17] This instruction does not embrace any statement touching the influence of the acquiescence mentioned upon the subsequent conduct of the defendant to his prejudice, or

predicate that such acquiescence was a material induce-
ment to such conduct, or that such conduct would not have
occurred but for such acquiescence, or contain any like state-
ment which would properly base the instruction upon the
doctrine of estoppel. The instruction rests upon the posi-
tion that the mere acquiescence of the defendant mentioned
estopped him from afterwards asserting any adverse claim
of title inconsistent with the validity of the survey in the
accuracy of which he had acquiesced. As said in *Cox* v.
*Heuseman*, 124 Va. 159, at p. 166, 97 S. E. 778, at p. 780,
of the same position taken in the instruction there in-
volved: "Such is not the law." It is well settled by the
weight of authority, and certainly in Virginia, although
contrary holdings may be found elsewhere, that such mere
acquiescence does not operate as an estoppel in such case,
for the reason that, if this were so, such acquiescence would
be given the effect of an independent source of title. As
said in *Reynolds* v. *Wallace*, 125 Va. 315, at p. 318, 99 S. E.
516, 517, quoting from *Cox* v. *Heuseman*, *supra* (124 Va.
159, at p. 166, 97 S. E. 778, at p. 780) : "Acquiescence and
admission as to boundaries may become very proper and
very important evidence in determining where the title
boundaries are, and such acquiescence and admissions may
exist or be made under circumstances which will estop a
landowner from denying them; but they are not in them-
selves independent sources of title." And continuing, the
following is said in the *Reynolds* v. *Wallace Case*, quoting
from *McMurray* v. *Dixon*, 105 Va. 605, at p. 611, 54 S. E.
481, at p. 483 : "No mere parol agreement to establish a
boundary and thus exclude from the operation of a deed
land embraced therein can divest, change or affect the legal
rights of the parties growing out of the deed itself." See
also the authorities cited on this point in the last named
case.

[18] 7. There remains for our consideration the assign-
ment of error that the verdict was contrary to the law and

the evidence. What is said above in effect disposes of all of the questions raised by such assignment, except that no specific reference is above made to any agreement there may have been of the respective parties plaintiff and defendant and of a predecessor in title of the defendant touching the location of the boundary lines in controversy, concerning which there is evidence in the case as set out in the statement preceding this opinion. As appears from the authorities just quoted, however, the doctrine is firmly settled in Virginia, that such agreements, if they existed, could not have conferred title. If any such agreement was found by the jury to exist it was proper evidence for the consideration of the jury on the subject of the true location on the ground of the boundary lines in controversy, in so far as such boundaries were designated in the evidence of title in evidence; but no further. Hence, for the reason above stated we are of opinion that such verdict was not contrary to the law and the evidence in so far as the boundary line between the land of the plaintiff and the defendant's Beasley land is concerned, but that the contrary is true of the verdict in so far as the boundary line between the land of the plaintiff and the defendant's Ponton land is concerned.

The foregoing disposes of all of the assignments of error in the case.

For the reasons above given the judgment under review will be affirmed in so far as the boundary line from "A" to "B," and the parcel of land "a b B A," shown on said diagram are concerned; but it will be set aside and annulled in so far as the boundary line from "B" to "D" and the parcel of land "C D E," shown on said diagram is concerned; and the case will be remanded for a trial *de novo* upon the question of the true location of the last named boundary line and of whether the plaintiff is entitled to recover the last named parcel of land, if the plaintiff should be so advised; such new trial to be had not in conflict with

the views expressed in this opinion. The plaintiff in error, the defendant in the court below, as the party substantially prevailing, will recover costs.

*Reversed in part and remanded.*