## Staunton.

ELLEN VANOVER v. D. B. HOLLYFIELD, ET AL.

September 23, 1926.

1. BOUNDARIES—*Evidence of Surveyor—Instruction of Court—Case at Bar.*—The instant case was a proceeding to establish a boundary line. Plaintiff introduced her title papers and the surveyor appointed by the court to survey the land in controversy and to locate the division line. The testimony of the surveyor fully sustained the contention of the plaintiff unless there was a mistake made in closing the survey. To show such a mistake defendants, without introducing their title papers, introduced two witnesses to prove a parol division of the land made by the predecessors in title of the plaintiff and the defendants. B, one of these witnesses, testified that at the instance of the predecessors in title of the parties he ran the division line for them, but neither of these witnesses was able to state that the line run by B was ever agreed upon and adopted by the predecessors in title of the parties. The court instructed the jury that if they believed that the predecessors in title of the parties made a division line between them and further that the line run by the surveyor appointed by the court was "the true division line between the parties, you will so find;" but if they believed that the true line was the line run by B, they should so find.

   *Held:*   That it was error in the court to virtually instruct the jury that all that they had to believe was that B ran a division line regardless of whether or not the same was ever agreed to by the predecessors in title of the parties as the division line.

2. BOUNDARIES—*Evidence—Testimony of Surveyor—Guess Work—Instructions—Case at Bar.*—In the instant case, a proceeding to determine a division line, a surveyor testified that he ran the division line of the property in question for the predecessors in title of the parties in the instant case, and that since the institution of the present action he had gone upon the land in controversy and again run the line in question "as near the way it run the first time as I could." Boundaries of land should not be the subject of guess work, and in view of this testimony of the surveyor it was error for the court to instruct the jury that if they believed from the evidence the true division line between the parties was the line run by the surveyor, they should so find.

3. BOUNDARIES—*Ambiguity in Deed as to Beginning Corner—Parol Evidence—Case at Bar.*—In the instant case, a proceeding to establish a boundary line, there was written evidence that there was an agreement between the predecessors in title of the parties to establish a beginning corner and to start the survey of the partition at this corner.

 *Held:* That parol evidence to establish the location of the "stake" which was the sole evidence of this beginning corner was admissible as there was an ambiguity in the deed, which described the line as "beginning at a stake in the road at a gate, an agreed corner."

4. BOUNDARIES—*Parol Evidence—Parol Evidence as Independent Source of Title.*—The extent of boundaries of land, and thus the title to land, cannot be established wholly by parol evidence, unsupported by written evidence of title, where title by adverse possession is not involved, and where the case is one in which the title claim is by deed and must have been derived by deed, if derived at all; for to hold otherwise would be to permit parol evidence to become an independent source of title, which by the weight of authority, and certainly in Virginia, is not permissible.

Error to a judgment of the Circuit Court of Wise county, in a proceeding to establish a boundary line. Judgment for defendants. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*A. N. Kilgore*, for the plaintiff in error.

*W. W. G. Dotson*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

The plaintiff in error filed her petition, under section 5490 of the Code of 1919, to establish the boundary line between the real estate owned by her in fee simple and the real estate owned in fee simple by the defendants in error.

There is no dispute as to title involved in this controversy. The plaintiff and the defendants derive title

from a common source, viz:   W. N. Hamilton, who was the owner of a tract of land, situated on the waters of Bold Camp creek, containing two hundred twenty-one and fifteen one-hundredths acres of land.

By deed bearing date the 2nd day of March, 1907, Hamilton and wife conveyed this tract of land to James A. Dotson, who in turn conveyed a one-half interest in same to E. B. Cantrell.   On October 8, 1907, Dotson and Cantrell partitioned the land and executed their several deeds for the respective interests.

Cantrell retained title to the land until the 21st day of December, 1909; on that date he reconveyed his one-half interest to Dotson, thus vesting in Dotson title to the whole of the W. N. Hamilton tract of land, containing two hundred twenty-one fifteen one-hundredths acres.   By deed dated the 27th day of October, 1910, James A. Dotson and wife conveyed to Fayette Vanover the tract of land which was conveyed to Dotson by E. B. Cantrell.   Fayette Vanover, on the 31st day of October, 1911, executed a deed for the land thus acquired to the plaintiff.

The defendants derive title from Madison Mullens, who was the grantee of James A. Dotson.   There was a trial by the jury which resulted in a verdict and judgment for the defendants.   Upon the trial, the plaintiff first introduced her title papers and then introduced S. N. Taylor, the surveyor appointed by the court to survey the land in controversey and to locate the division line.   The testimony of Taylor fully sustained the contention of the plaintiff, unless there was a mistake made in closing the survey.

To show there was such a mistake made, the defendants, without introducing any title papers, introduced two witnesses, William Boggs and Henry Brummitt, to prove that a parol division of the land had been made

by James A. Dotson and E. B. Cantrell. Boggs testified that at the instance of Dotson and Cantrell he ran a division line for them, dividing the W. N. Hamilton tract of land; that since the institution of this action he had gone upon the lands in controversy and resurveyed the line, locating the same *approximately* as formerly run.

This evidence was objected to by the plaintiff, but the court overruled the objection thereto. Brummitt testified that he was present when the line was run by Boggs, but does not know whether the line as run was adopted by Dotson and Cantrell.

As the location of this alleged agreed line between Dotson and Cantrell becomes important, in view of the instruction given by the court, we will quote in full the cross-examination of the witness Boggs:

Q. When did you run the line for Dotson and Cantrell?

A. About the year 1907 or 1908.

Q. Was it in the year 1907?

A. I don't remember.

Q. So you do not remember when you did the surveying?

A. No. It's been so long I don't remember.

Q. Is there anything that you can refer to that will refresh your memory so you can guess the correct date?

A. No.

Q. You do not know whether Dotson and Cantrell adopted the line you ran for them when they divided the Hamilton tract of land?

A. No. I don't know what they done.

Q. You did not do any running by the Hollyfield deed, did you?

A. No. I run the line by the Cantrell deed by adding the variations.

Q. When you ran the line you had to put in one call in order to make the line you ran go to the known corner on the hill?

A. Yes. There is a call left out of the Cantrell deed and I had to put it in to reach the corner on top of the ridge.

Q. As a matter of fact, you do not know where the true dividing line between the lands of the plaintiff and defendants is located on the grounds?

A. All I know about the line is the way I ran the line for them and the way I run it the last time, as shown on my plats.

Q. You did not have the notes you made in your first survey of this line at the time you ran the line the last time?

A. No. I run it the last time as near the way it run the first time as I could.

Q. The first line you ran, did you start from a gate?

A. Yes.

Q. The line in the Cantrell deed is reversed from the way you ran the first line for them, is it not?

A. Yes. Somebody reversed the calls and reduced them to feet. I run my line by poles.

Q. You had no way to locate the stake called for in the Cantrell deed at the gate from which point you made this last survey?

A. No. I started as near the center of the gate as I could.

Q. You do not know whether or not there was another gate there at the time Dotson and Cantrell made the survey by which they divided the Hamilton tract of land, and that afterwards this gate was moved down the hill further?

A. I do not think there was but one gate, and it was located about where the present gate now stands. If it has been moved I don't know it.

The court upon its own motion, and over the objection of the plaintiff, gave the following instruction:

[1, 2, 3] "The court instructs the jury that if you believe from the evidence that Cantrell and Dotson made a division line between them, and you further believe from the evidence the line run by Taylor is the true division between the parties, you will so find; but if you believe from the evidence the true division line between the parties is the line run by Boggs, you will so find."

This action of the court is assigned as error.

In the deed from Dotson to Cantrell is found this language: "Beginning at a stake in the road at a gate, an agreed corner by James A. Dotson and E. B. Cantrell." This indentical language appears in the deed of Cantrell reconveying this tract of land to Dotson. In the deed from Dotson to Fayette Vanover appears the following language: "Beginning with a *greeded* line between E. B. Cantrell and James Dotson at a stake at the road on the east side of said branch    *    *    *." It is thus observed that there is written evidence that there was an agreement between Dotson and Cantrell to establish a beginning corner and to start the survey of partition at this corner. Parol evidence to establish the location of the "stake" which is the sole evidence of the beginning corner is admissible, as there is an ambiguity in the deed.

The record shows that Dotson has been dead for several years, but is silent on this score as to Cantrell. The only witnesses who testified directly in regard to the agreement locating the division line were Boggs and Brummitt. Their evidence, so far from being conclusive of the question, shows plainly that they were unable to state that the line run by Boggs was ever agreed upon and adopted by Dotson and Cantrell.

This being true, it was error for the court to virtually

instruct the jury that all they had to believe was that
Boggs ran a division line, regardless of whether or not
the same was ever agreed to by Dotson and Cantrell as
the division line, and in view of the further fact that
Boggs, upon cross-examination, stated: "I run it the
last time *as near the way* it run the first time as I could."
(Italics added.)

Boundaries of land should not be the subject of guess
work.    While we express no opinion as to the weight of
the evidence, we see little difficulty in the instant case
in establishing the true boundary line, when the begin-
ing corner is once definitely fixed.

The extent to which parol evidence is competent to
fix the boundaries of land is determined in *Bradshaw* v.
*Booth*, 129 Va. 19, 105 S. E. 555.    Judge Sims, deliver-
ing the opinion of the court, said:

[4] "The extent of boundaries of land, and thus the
title to land, cannot be established wholly by parol evi-
dence, unsupported by written evidence of title, where
title by adverse possession is not involved, and where
the case is one in which the title claim is by deed and
must have been derived by deed, if derived at all; for to
hold otherwise would be to permit parol evidence to be-
come an independent source of title, which by the
weight of authority, and certainly in Virginia, is not
permissible."

The action of the court in refusing certain instruc-
tions offered by the plaintiff is also assigned as error.

As we are of the opinion that either party is entitled
to explain the ambiguity in the deed, by showing the
exact location of the "agreed corner," it was not error
to refuse the instructions in their present form.

In view of our conclusion to reverse the case, it would
be improper to discuss the assignment of error that the
verdict is contrary to the law and the evidence.

It follows from these views that we are of opinion to reverse the judgment complained of, set aside the verdict of the jury, and remand the case to the circuit court for a new trial.

*Reversed.*