## Richmond.

## COX V. HEUSEMAN.

### January 16, 1919.

1.  BOUNDARIES—*Arbitration and Award—Parol Submission and
    Award—Semble.*—It would seem that both the submission to
    arbitration and the award between the parties as to the loca-
    tion of a disputed boundary line may be by parol; and that
    any valid award settling the question of the location of the
    boundary line is, as to that question, a sufficient foundation
    for the party prevailing in the arbitration to stand upon in a
    subsequent action *between the same parties* involving the title
    to land. The theory is that the arbitrators do not make new
    boundaries nor change old ones, but merely determine, as a
    conclusive fact, the true location of boundaries pre-existent.

2.  ARBITRATION AND AWARD—*Parol Evidence to Vary Award.*—In
    the absence of fraud or other exceptional circumstances, the
    terms of an award, when reduced to writing, cannot be varied
    by parol testimony. In the instant case the award in question
    as soon as made was written out and signed. It allowed de-
    fendant a small amount in damages for timber cut and tres-
    passes committed and in no way referred to the boundary line
    in dispute. It was, therefore, error to admit parol evidence to
    the effect that the award fixed the line in a statutory proceed-
    ing between the parties to establish the line.

3.  BOUNDARIES—*Arbitration and Award—Case at Bar.*—In the
    instant case the question was not whether one of the parties
    to a dispute as to a boundary line at the time of its sub-
    mission to arbitration agreed in fact to the location of the line
    as the same is claimed by the other, nor, indeed, what the
    arbitrators themselves believed as to the true location, but
    whether the establishment of the line was a matter embraced
    in the submission and award. The two questions are vitally
    different. The authorities in relation to the effect of a valid
    award in a boundary dispute, and those in regard to the effect
    of a verbal admission or agreement by a landowner as to the
    location of a line, will show that while such an award is
    probably sufficient to afford a basis for either the prosecution

or defense of an action of ejectment between the same parties, such an admission or agreement has not that effect.

4.    BOUNDARIES—*Acquiescence—Parol Agreement as to Boundaries.*—
Acquiescence or verbal acknowledgment or agreement as to the location of a disputed boundary cannot, where there is no question of title by adverse possession, *proprio vigore,* pass title from one man and vest it in another. Acquiescence and admissions as to boundaries may become very proper and very important evidence in determining where the true boundaries are, and such acquiescence and admissions may exist or be made under circumstances which will estop a landowner from denying them; but they are not in themselves independent sources of title. No mere parol agreement to establish a boundary and thus exclude from the operation of a deed land embraced therein can divest, change or affect the legal rights of the parties growing out of the deed itself.

Error to a judgment of the Circuit Court of Goochland county, in a statutory proceeding to establish a disputed boundary. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Smith & Smith,* for the plaintiff in error.

*W. M. Justis, Jr.,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This is a statutory proceeding instituted by W. H. Cox to establish a disputed boundary line between his land and that of an adjoining landowner, Henry Heuseman.

There was a jury trial, which resulted in a verdict finding the line substantially as claimed by the defendant. Heuseman, and the court, in accordance therewith, rendered the judgment under review.

The material facts will sufficiently appear as we proceed with a discussion of such of the assignments of error as seem to us to require attention. The first assignment relates to the action of the court in admitting evidence of, and instructing the jury upon, an alleged parol submission and award by which the disputed line had been, as the defendant claimed, fixed and settled between the parties some years prior to the institution of the present proceeding. The verbal testimony was conflicting as to whether the alleged submission and award embraced a final fixing and settlement of the line, or merely covered a then existing dispute over the cutting of certain timber within the disputed area. It is conceded that some sort of controversy, either as to the timber alone or as to that and the exact location of the line as well, was submitted to —— Dunleavy and F. E. Thomas, as arbitrators, and that they made an award thereon, calling in a surveyor, C. C. Cocke, to assist them; but neither the parties nor the arbitrators agree in their parol testimony as to what was embraced in this arbitration. The plaintiff, Cox, and the arbitrator, Thomas, say that only the timber was involved, while the defendant, Heuseman, and the arbitrator, Dunleavy, say that arbitration embraced both the line and the timber. The surveyor, Cocke, (sometimes also called Cox in the record), did not testify. Thomas said: "The arbitrators never intended to make any award about the land, as will appear from the written award itself which I now show to the court and jury. Cox paid me the $15.00 (for the timber) and I paid it to Mr. Heuseman. The matter of the line was never fixed by the arbitrators. Cox agreed to accept the old fence as the line until either party could find of record a plat showing the true line." The award referred to by him was as follows: "Received of Henry Cox $15.00 in full for Henry Heuseman for damages settled by Thomas, Dunleavy and Cocke. This $15.00 pays all dam-

ages, trespasses and timber." The names of Thomas, Dunleavy and Cocke were all signed to this paper at the time, the names of the last two by Thomas at their direction. The testimony of the plaintiff, Cox, accords with that of Thomas, and sets out in more detail that the only agreement Cox made with reference to the line was that he would accept it as claimed by Heuseman unless he could find a map showing the true line, which he claims to have subsequently done.

Heuseman concedes that the paper set out above was drawn up and signed at the time to represent the decision arrived at, but claims that the arbitrators also "agreed to fix the line." His testimony in this connection was as follows: "After Cox put his wire fence up, I told him he was over on me, and he agreed to have it arbitrated. He picked Mr. Thomas, and I picked Mr. Dunleavy, and we called in Mr. Cox, the surveyor from Hanover county. We all went over the line and Cox said he was willing to put his fence back to the old fence row. The arbitrators met at my house for dinner, and after dinner they all agreed to fix the line where we had run it, and Cox was to give me $15.00 for the timber cut off the land by Jones, and Mr. Thomas drew up the award, which has been introduced as evidence, Cox was not there at the time the award was made. He had gone home. Mr. Thomas signed all our names to the paper. Mr. Cox left before the paper was written, but told Mr. Thomas what to write. All this was agreeable to Cox. After the award was made, Cox moved his fence back to the line of the fence, where it stayed until a short while before this suit, when he moved it out where it now is."

Dunleavy, after stating that he was requested to act as one of the arbitrators, testified further as follows: "We all went down to the old fence, Cox, Heuseman, and Mr. Cox, the surveyor. Down on the line Cox agreed to put his

fence back on the old fence row, and we chopped the line down it. We all went to Mr. Heuseman's for dinner and the arbitrators all decided to put the line on the old fence row and to give Heuseman $15.00 for the wood Jones had cut. Mr. Thomas signed all our names to the award. There was nothing said about leaving the line at the place we put it until either party could find a plat on record. I understood that we made an award on the line as well as the damages. The award was written by Mr. Thomas and we told him to sign our names to it, which he did. The award is here in evidence."

The foregoing is the material evidence bearing upon the arbitration and award. The instruction which the court gave in regard thereto was as follows: "The court instructs the jury that if they believe from the evidence that the plaintiff and defendant submitted the matter in dispute between them as to the boundary between their lands to arbitration, and that the arbitrators decided the dispute in favor of the line now claimed by the defendant, they must find for the defendant." The plaintiff duly objected to all of the defendant's evidence upon which this instruction was based, and to the instruction itself.

[1, 2] The question of the effect in an action to try title of a previous parol submission and award between the parties as to the location of a disputed boundary line, though discussed somewhat fully in the briefs, does not, as we think, arise in this case. It would seem that both the submission and the award may be by parol (*Miller* v. *Miller,* 99 Va. 125, 37 S. E. 792; *Jones* v. *Dewey,* 17 N. H. 598; *Byam* v. *Robbins,* 6 Allen [Mass.] 63; 3 Cyc. 660, 665); and that any valid award settling the question of the location of the boundary line is, as to that question, a sufficient foundation for the party prevailing in the arbitration to stand upon in a subsequent action *between the same parties* involving the title to land. The theory is that the arbitrators do not make

new boundaries nor change old ones, but merely determine, as a conclusive fact, the true location of boundaries pre-existent. (Morse on Arbitration and Award, 487-8, 511, 513, 514; *Jackson* v. *De Long*, 9 Johns. [N.Y.] 43; *Sellick* v. *Addams*, 15 Johns. [N. Y.] 197; *Searle* v. *Abbe*, 13 Gray [Mass.] 409, 2 R.C.L., p. 358, sec. 9, 2 Am. & Eng. Enc. L. [2d ed.], p. 801 and note 1.) But we may pass these questions. The undisputed testimony in this case shows that as soon as the award was made it was written out and signed—both parties vouch for and rely upon this fact—and this award, which thus becomes the only competent evidence of what the arbitrators did (3 Cyc. p. 804 and note 38), in no way refers to the line in dispute. Requiring Cox to pay for certain timber and trespasses, as the award did, in a measure involved the property lines, but by no means of necessity fixed the same in any particular place. The timber cut and trespasses committed may well have been on the defendant's land without any necessary consequence that the line in dispute in this present proceeding was found by the arbitrators to be as now claimed by the defendant. Independent of the principle that, in the absence of fraud or other exceptional circumstances not present here, the terms of an award, when reduced to writing, cannot be varied by parol testimony (3 Cyc. 804), it is inconceivable that, if the arbitrators had believed they were determining the final location of a controverted line, they would have written out an award as to the small amount of timber involved, while leaving to be settled by memory and parol evidence the far more important matter of the disputed boundary.

[3] It must be remembered that the question we are now considering is not whether Cox at that time in fact agreed to the location of the line as the same is now claimed by Heuseman, nor, indeed, what the arbitrators themselves believed as to the true location, but whether the establish-

ment of the line was a matter embraced in the submission and award. The two questions are vitally different. The authorities above cited in relation to the effect of a valid award in a boundary dispute, and those cited below in regard to the effect of a verbal admission or agreement by a landowner as to the location of a line, will show that while such an award is probably sufficient to afford a basis for either the prosecution or defense of an action of eject-ment between the same parties, such an admission or agreement has not that effect. There was competent evi-dence upon which the jury might have found, notwith-standing the denial thereof by Cox, that he had accepted and agreed to the line as fixed in the verdict, but none that the award embraced that question. In the words of de-fendant's witness Dunleavy, "the award is here in evi-dence," and while it is a crude instrument, every witness who testified about the arbitration says that this paper was written to express the decision of the arbitrators. This award, which has never been attacked or questioned, does not refer to the line, and we are of opinion, therefore, that it was error to admit the testimony as to the arbitra-tion and to give the instruction in regard thereto.

[4] Instructions 1 and 3, given for the defendant over the plaintiff's objection, were respectively as follows: (1) "The court instructs the jury that if they believe from the evidence that the fence between the lands of the plaintiff and defendant which was built by Proffit, many years ago, was acquiesced in as the true line by the then owner of the Cox land, they must find for the defendant, but in de-termining whether or not there was such acquiescence they may consider the fact whether there was or not ob-jection to the building of such fence, together with all of the other evidence in the case." (3) "The court instructs the jury if they believe from the evidence that after a dis-pute between the plaintiff and defendant as to the bound-

ary between them the plaintiff admitted the true line to be the line now claimed by the defendant, they must find for the defendant."

These instructions (which were not attempting to deal with adverse possession as a source of title) amounted to saying to the jury that acquiescence or verbal acknowledgment or agreement as to the location of a disputed boundary could, *proprio vigore,* pass title from one man and vest it in another. Such is not the law. Acquiescence and admissions as to boundaries may become very proper and very important evidence in determining where the true boundaries are, and such acquiescence and admissions may exist or be made under circumstances which will estop a landowner from denying them; but they are not in themselves independent sources of title. "No mere parol agreement to establish a boundary and thus exclude from the operation of a deed land embraced therein can divest, change or affect the legal rights of the parties growing out of the deed itself." *McMurry* v. *Dixon,* 105 Va. 605, 611, 54 S. E. 481, 483, and cases there cited.

The instructions in question were improper and should have been refused.

There were other assignments of error, but we discover nothing in them to the prejudice of the plaintiff, and nothing therein requiring any discussion.

For the errors above pointed out, the judgment must be reversed, and the case remanded for a new trial to be had not in conflict with the views herein expressed.

*Reversed.*