# Richmond

WALTER E. BRAUER, JR., ET AL. v. MARIUS E. ADAMS.

January 20, 1958.

Record No. 4754.

Present, Eggleston, Spratley, Buchanan, Whittle and Snead, JJ.

The opinion states the case.

*John C. Williams (R. R. Gwathmey, III; Williams & Gwathmey,* on brief), for the appellants.

*George E. Haw (Haw & Haw,* on brief), for the appellee.

WHITTLE, J., delivered the opinion of the court.

Adams filed a petition in the circuit court under §§ 8-836 and 8-837, Virginia Code, 1950, against the Brauers, praying for the establishment of the true boundary line between his farm known as "Spring Hill" and the Brauer farm, known as "Turkey Hill". In their answer the Brauers joined in the prayer of the petition.

A jury was empanelled for the purpose of determining the issue and by its verdict established the line in accordance with the theory advanced by the Brauers. On motion of Adams the jury's verdict was set aside and an order entered establishing the line contended for by Adams, from which we granted the Brauers an appeal.

Several assignments of error are stressed by the Brauers, some of which will be treated generally in our discussion of the question presented, *i.e.,* Did the court err in setting aside the jury's verdict and establishing the line contended for by Adams.

The record discloses that these farms lie on the northern side of the Chickahominy river near Grapevine bridge in Hanover county.

Turkey Hill farm, now owned by the Brauers, has been assessed on the land books since 1818 as containing 225 acres, and was so assessed until conveyed to the Brauers by Joseph Adams and wife and Andrew H. Adams and wife by deed dated July 22, 1949. At this time the land was conveyed by metes and bounds in accordance with a map prepared for the Brauers by R. W. Wysor, a surveyor in the office of W. W. LaPrade & Bros., wherein it was described as containing 293 acres, more or less.

Spring Hill farm was acquired by Marius E. Adams from George E. Haw, special commissioner, by deed dated October 10, 1949. It was conveyed to Adams as containing 360 acres, more or less, and

had been assessed on the land books continually since 1854 as containing this acreage.

It is disclosed that at the time of the institution of this suit, so far as the parties thereto knew, there was no record tending to establish the dividing line between the two properties except the line run in July, 1949, by Wysor for the Brauers.

Adams had Spring Hill surveyed after the Brauer map had been put on record and found that as a result of the Wysor survey he had only 318 acres instead of 360 acres, while the Brauers had 293 acres instead of 225 acres. The parties being unable to adjust the discrepancy, this suit resulted.

During the pendency of the suit the processioners' book[1] containing a description of the properties involved was discovered and examined by counsel. The book had been ordered prepared by the county court after the destruction of the records of Hanover County in the Richmond fire of 1865, the deed books having been sent to Richmond for safe keeping during the war between the States.

In dealing with the Spring Hill farm the processioners describe it as follows:

"Commencing at a maple stump below McClellan bridge, thence up swamp to gum pointers G. Watt's corner, thence as Watt's line runs thence East to fore and aft red oak on road leading from Gaine's Mill to Barker's Mill, thence down road to pine stump corner to J. F. McGhee, thence fore and aft hickory, thence fore and aft pine; thence corner holly (near branch), thence as branch meanders to J. F. McGhee's corner on Turkey Hill; thence black gum; thence fore and aft sweet gum; thence fore and aft sweet gum; thence corner no marked tree, thence fore and aft gum; thence to maple stump where we commenced."

[1] Processioners were provided for in the Acts of 1865-66, p. 197; the enactment being slightly amended in the Code of 1887, ch. CVI, § 2405, p. 587. The legislation was brought about after the war between the States when many of the courthouses in the Commonwealth had been burned by Northern forces and the land records destroyed. Processioners appointed by the court were ordered to go over the county and run the lines between the various property owners. They assembled adjacent landowners and ran the dividing lines. The reports showing date of processioning, owners of land, description of marks or corners, etc., together with persons present at the time of the processioning, were recorded under the provisions of the enactments in processioners' books. The evidential effect of the reports is established by § 2408, Code, 1887, wherein it is said: "(A)nd the same shall be evidence of the boundaries of any such lands in any future controversy in regard to them, and shall have the same effect as if they were deeds duly recorded according to the registry acts of this State. * * *".

This report shows that J. Adams was present when the processioners ran the lines.

In dealing with the Turkey Hill farm, the processioners describe it as follows: "No corner known". The report then continues:

"Commencing at gum pointers to corner on swamp between Turkey Hill and J. F. McGhee, thence as line runs between Turkey Hill and J. F. McGhee to gum pointers to corner between Turkey Hill and J. F. McGhee, to old hedge row, thence southeast to side line red oak on Turkey Hill; thence corner at old house place (no marked tree) turn in line south, thence side line red oak, thence fore and aft dead pine; thence fore and aft poplar; thence fore and aft sweet gum; thence fore and aft white oak; thence fore and aft pine; thence fore and aft white oak thence to Chickahominy; thence up Chickahominy to corner between Turkey Hill and J. Adams, thence as line runs between Turkey Hill and J. Adams to corner where we commenced."

This report shows that J. F. McGhee, J. Adams and Wm. Martin were present when the lines were run.

After the discovery of the processioners' reports above referred to (while the suit was pending) the court ordered William Hugh Redd, County Surveyor of Hanover County, to take the processioners' reports and run and plat the dividing line between the two properties. This he did, and reported to the court.

The record discloses that Adams introduced his chain of title and offered in evidence the processioners' reports and the plat made by Redd in accordance therewith. Redd testified that he ran the line between the two properties in accordance with the processioners' reports, beginning the line as the reports required, below the Grapevine bridge (formerly known as McClellan bridge); thence the line extended up the Chickahominy swamp to the line of the Watt property, now known as "Springfield"; thence along said line as shown on his plat to a point referred to as the McGhee corner which was the corner known as the "Old McGhee Tract," later acquired by James R. Adams and at the time of the survey owned by Andrew Adams.

From this point he ran the line in accordance with the processioners' reports to the line as run by Wysor, extending along a ditch. From that point, which was an established and recognized point and used by both Wysor and Redd, he ran the line in accordance with the processioners' reports.

He further testified that as the processioners' reports were made in 1867, some eighty-nine years before, it was impossible for him to find the marked fore and aft trees as described in the line, but he did find remains of an old fence which in many instances showed strands of wire embedded in the center of trees measuring two feet across, which indicated to him that he was on the line as shown by the processioners' reports. Following this fence he reached a point on the State highway near Grapevine (McClellan) bridge and extended the line across the highway to the Chickahominy river to a point below the bridge which he testified was approximately at the point of beginning on the line as shown by the reports.

He testified that his information was that the McClellan bridge and the Grapevine bridge were one and the same; and also that the road to the bridge showed no indication of having been moved.

Redd further testified that up to the point which was recognized by all parties as the northern end of the line between the two properties he found no trouble whatever in running the line of the Spring Hill property; that it worked out with exactness in relation to the processioners' reports, and that the line which he ran from that point to the point below the Grapevine (McClellan) bridge was, as near as he could figure, the line as laid down in the reports.

Marius Adams, Dr. Jacob Adams and Bryant Adams, sons of John Ewell Adams, deceased, who formerly owned an interest in both Spring Hill and Turkey Hill, testified that their father told them that the line between the properties ran from the branch at the McGhee corner (conceded by all to be a correct point in the line) to a point below McClellan bridge. Cliff McGhee testified to the same effect as to statements of Gregory Turner, deceased, a former owner of Spring Hill.

Since the survey made by Wysor for the Brauers and the processioners' reports use the McGhee corner at the branch as an agreed point, and since the processioners' reports locate the other end of the line at a point below the bridge, the issue in the case is narrowed to the course of the line between these two fixed points.

[■ The evidence discloses that Spring Hill and Turkey Hill were at one time owned by Joseph Adams, and upon his death, by his children, until James R. Adams acquired all of the interest in Turkey Hill and Julia Kate Adams Turner and Gregory Turner acquired all the interest in Spring Hill; that during the period of this separate ownership James R. Adams and Julia Kate Adams Turner occupied

the relationship of grantee and grantor as to both farms as they had each executed a deed of exchange of their respective interests in the two farms; that upon the death of Julia Kate Adams Turner, James R. Adams, as one of her heirs at law, acquired an interest in Spring Hill, which interest, together with Turkey Hill, passed to his children under his will; that among his children are Joseph Adams and Andrew Adams, the Brauers' grantors. It is therefore conceded that this joint ownership and relationship of grantee and grantor precludes any question of adverse possession. *Nickels* v. *Miller*, 126 Va. 59, 101 S. E. 68.

In order to establish the line claimed by them as the dividing line, the Brauers introduced the LaPrade plat made for them by Wysor. In this regard, the record discloses that the plat was made without any reference to the processioners' reports, which had not then been discovered, and further that it did not purport to be run, with the exception of the McGhee corner, in accordance with any deed, plat, line, mark, monument, course or distance set out in the recorded chain of title of either of the parties.

The evidence of Wysor shows that the plat was made entirely by guess, and that the line ran from the McGhee corner to a point on the Chickahominy river 1370 feet above Grapevine or McClellan bridge. This conclusively demonstrates error.

The Wysor plat was made in 1949, many years after the death of the parties whose statements were sought to be introduced by the Brauers in order to maintain his survey. Thus the court properly excluded as hearsay the statements of witnesses made years prior thereto.

The extent of boundaries of land or title to land cannot be established wholly by parol evidence if unsupported by some written record of title. This is true where title by adverse possession is not involved, and where the case is one in which the title claimed is by deed and must have been so derived. To hold otherwise would be to permit parol evidence to become an independent source of title, which by the weight of authority, is not permissible. *Bradshaw* v. *Booth*, 129 Va. 19, 38, 105 S. E. 555.

In the *Bradshaw* case, *supra*, at page 38, we said:

"But such declaration and general repute to be admissible in evidence must have reference to [prior existing] monuments or other delineation on the ground of the extent of the boundaries designated in some evidence of title."

In view of the fact that no plat or deed in the chain of title showed any mark, monument, call or distance in the line run by Wysor, the court properly excluded the plat and the hearsay evidence by which the line was sought to be established. By the same reasoning the court properly admitted the evidence of witnesses regarding the line laid down in the processioners' reports which were of record long prior to the testimony introduced. The processioners' reports delineated the line between the properties involved, giving as the point at one end McGhee's corner (a recognized point), and the other, the point in the line below the Grapevine or McClellan bridge.

The admissibility of the evidence introduced by Adams in support of the processioners' line is sanctioned in the case of *Woody* v. *Abrams*, 160 Va. 683, 694, 169 S. E. 915.

While a statement of quantity of land is regarded as the least certain mode of description, in this instance there being a lack of description because of the want of courses, distances and monuments save in the processioners' reports, the statement of quantity here should be persuasive and of some probative value. 3 M. J., Boundaries, § 20, p. 442.

It will be remembered that Spring Hill has been listed for tax purposes since 1854 as containing 360 acres, and Turkey Hill has been assessed for taxation since 1818 as containing 225 acres. The Wysor survey gave to Turkey Hill 293 acres, leaving Spring Hill with only 318 acres; whereas the Redd plat, run in accordance with the processioners' reports, gave Spring Hill 379.2 acres and Turkey Hill 231.8 acres. Thus, according to the Redd survey, neither tract is left with less land than is shown by the assessments.

The record discloses that there was no basis upon which to predicate the dividing line run by Wysor, and under the evidence the court was justified in determining that the line run by the county surveyor in accordance with the processioners' reports was the true dividing line between the properties involved.

For these reasons the order of the trial court establishing the latter line is

*Affirmed.*