**Carroll M. WILLIAMSON, Jr.,
Complainant,**

v.

**Evelyn Byrd WILLIAMSON et
al., Respondents.**

Civ. A. No. 75–15–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Jan. 22, 1976.

Francis N. Crenshaw, Crenshaw, Ware & Johnson, Norfolk, Va., for complainant.

Robert G. Doumar, Doumar, Pincus, Knight & Harlan, Norfolk, Va., for respondents.

## OPINION AND ORDER

CLARKE, District Judge.

This is an action for resolution of a dispute over the ownership of a tract of land [hereinafter referred to as the Stokes tract], devised under the will of Carroll M. Williamson, Sr., executed September 10, 1951. Mr. Williamson, Sr., a resident of Chesapeake, Virginia, died on December 14, 1967, survived by his daughter, Evelyn Byrd Williamson [Evelyn] and his son, Carroll M. Williamson, Jr. [Carroll Mac], both of whom claim ownership of the Stokes tract as devisees of Carroll Williamson, Sr. Jurisdiction of this Court is founded on diversity of citizenship, 28 U.S.C. §§ 1332 and 1391, and, therefore, the Federal District Court sits, in effect, as a state court applying the law of the state. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

At his death, Mr. Williamson, Sr. was the owner of certain real estate in the City of Chesapeake, Virginia. The defendant, Evelyn, was given a specific devise of several parcels, the remainder of the real property being devised by the residuary clause of the will to the plaintiff, Carroll Mac. Under the uncontroverted provisions of Mr. Williamson, Sr.'s will, Carroll Mac and Evelyn became adjoining landowners from a common grantor. A dispute arose, however, over the ownership of the Stokes tract, which runs for much of its length, on its northern boundary coterminous with property devised to Evelyn and which also adjoins on its southern boundary, land devised to Carroll Mac. The Stokes tract is a parcel of land containing approximately 12.-87 acres, initially acquired by Mr. Williamson, Sr., by a deed, duly recorded, of Ellen Stokes, et al., dated September 30, 1927.

In an attempt to settle the disagreement as to the Stokes tract, a boundary line agreement (Exhibit 2), dated April 9, 1970, between Evelyn Byrd Williamson, widow, and Carroll M. Williamson, Jr., was executed by Carroll Mac on or about June 24, 1971, and by Evelyn on or about June 30, 1971, and was recorded in the Clerk's office of the Circuit Court of the City of Chesapeake, Virginia, on August 16, 1971. The boundary agreement incorporates a plat showing a survey of the property line agreed to by the parties to this document which was designed to establish boundary lines between their respective parcels of land on Battlefield Boulevard.[1]

From time to time, since and before execution of the boundary line agreement, Evelyn, treating the Stokes tract as belonging to her, made conveyances to her children and their respective spouses involving the Stokes tract.

The relationship of the parties needs to be outlined. Evelyn, born in November, 1903, is the daughter of Mr. Williamson, Sr. and his first wife, whereas, Carroll Mac, born May 23, 1943, is the son of Mr. Williamson, Sr. and his second wife. Accordingly, Evelyn is Carroll Mac's half-sister. Evelyn, the widow of Harry A. Williamson, has three children, all of whom are defendants in this suit: Harry Ashton Williamson, Jr. [Pete], Porter M. Williamson [Porter], and Carol Williamson Doyle [Carol].

Based on this history of disagreement and attempted compromise, plaintiff brought suit seeking a determination that he has title to the Stokes tract under the will of Mr. Williamson, Sr. and that the Boundary Agreement is of no binding force or effect. As a consequence, plaintiff further asks that all conveyances by Evelyn of any interest in the Stokes tract be declared null and void and that the defendants convey to the plaintiff any "record" interest they may have in the Stokes tract, or in lieu

---

1. Battlefield Boulevard, a public thoroughfare, divides the Stokes tract, as well as other parcels devised to the heirs of Mr. Williamson, Sr., and runs from North to South through the property in dispute.

thereof, pay to the plaintiff the fair market value of the parcel which is alleged to be approximately $176,000. For decision on the merits of the case, the issues before the Court are as follows:

1. Whether the boundary line agreement between Evelyn Byrd Williamson and Carroll Mac Williamson, Jr., dated April 9, 1970, executed in June, 1971, and recorded on August 16, 1971, is a valid agreement between the parties thereto.

2. If the boundary agreement is valid, does the agreement convey any interest which Carroll Mac may have had to the Stokes tract to Evelyn or her grantees.

3. Whether Evelyn Byrd Williamson or her children have any interest in the Stokes tract under the terms of the aforementioned boundary agreement; or the will of Mr. Williamson, Sr.; or, as to Evelyn's children, by valid conveyance from Evelyn.

4. Whether Carroll Mac Williamson, Jr., or Evelyn Byrd Williamson inherited the Stokes tract from their father, Carroll M. Williamson, Sr., under his will, executed on September 10, 1951.

If the Court concludes that the boundary line agreement is valid and that the disputed property, the Stokes tract, lies on Evelyn's side of the boundary line described in the agreement and if, under Virginia law, the boundary line agreement effectively conveys any interest which Carroll Mac may have had to the property or effectively bars Carroll Mac from asserting claim to the property, then it shall be unnecessary for the Court to consider issues 3 and 4 set forth above.

I

The parties to this suit have been before the Court on two occasions to present evidence. After the first appearance, the Court, having heard the evidence and argument of counsel, entered an Order, dated November 15, 1975, refusing to declare the boundary line agreement null and void for reasons stated in open court. The Order also permitted the defendants to present additional evidence at a later date on matters taken under advisement by the Court; the plaintiff had previously instructed the Court that he had no further evidence to offer. The case is now before the Court upon all the evidence and legal memoranda of counsel. To clarify the reasoning in this Opinion, however, the Court's findings made in open court will be restated and explained more fully.

Plaintiff contends that Evelyn Byrd Williamson, who was appointed under the will and who qualified as executrix of the Estate of Carroll M. Williamson, Sr., breached her fiduciary duty. Specifically, plaintiff alleges that Evelyn erroneously allotted herself the Stokes tract because she failed to get an objective interpretation of the will terms. Plaintiff further charges that Evelyn failed to disclose to Carroll Mac the existence of a plat entitled "Composite Plan, Williamson Property, Chesapeake, Va." (Exhibit 3) [hereinafter referred to as the Composite Plan], which shows the Stokes tract as separate from the Home farm. Important to the positions of the parties is whether or not the Stokes tract is to be considered a part of the "Home farm" tract.[2]

The law of Virginia governing the responsibility and duty of an executrix is clear. Like any fiduciary, an executrix holds a position of trust and confidence requiring the exercise of "the highest fidelity and utmost good faith in dealing with the estate. In the discharge of his fiduciary obligations, he is required to use the same measure of care which a careful and prudent person would ordinarily use under like circum-

---

2. The defendants assert under their interpretation of Carroll Williamson, Sr.'s will that the Stokes tract was a part of the property owned by Mr. Williamson, Sr. at his death and intended to be included in the devise of the "Home farm" to Evelyn. The Home farm, at one time a working dairy farm, contains the ancestral home.

stances in his own personal affairs." *Virginia Trust Company v. Evans,* 193 Va. 425, 69 S.E.2d 409, 414 (1952). The importance of this standard is emphasized by the collateral principle that self-dealing is presumptively fraudulent and "the burden [is] on [the fiduciary] to overcome the presumption of constructive fraud by clear and satisfactory evidence, more than a mere preponderance of the evidence." *Creasy v. Henderson,* 210 Va. 744, 749–50, 173 S.E.2d 823, 828 (1970).

█ The Court finds the actions of Evelyn Byrd Williamson as executrix of the Estate of Carroll M. Williamson, Sr. were not fraudulent. Although it was not until January, 1974 that Carroll Mac saw for the first time the Composite Plan, which he new relies on to show his ownership of the Stokes tract, the evidence shows that the Composite Plan was made available to Carroll Mac from the time of its origin in 1968. Mr. J. M. Hill, a professional engineer and land surveyor, testified that the drawing was made by him as an office worksheet for land use planning in 1968 and that Carroll Mac visited his office and had full access to all drawings, as well as being present for discussions of land use planning.[3] Furthermore, Evelyn sought the advice of her father's attorney who drafted the will in question. Carroll Mac attended this meeting at which the attorney, Otto Lynch, stated that the will spoke for itself. The parties disagree as to whether Mr. Lynch said Evelyn was to inherit the "old farm" or whether he said Evelyn was to inherit "the property on the west side of Oak Grove Road represented by certain tax tickets." Neither description is sufficiently precise for determination, but it is clear that the parties were seeking a resolution of their dispute. It is important to recognize that the parties to this suit were all actively engaged in reaching a compromise and that the plaintiff had secured the advice of his own attorney (Exhibit 25). The conduct of the parties accords with the strict fiduciary rule prohibiting self-dealing. It has been stated that an executrix who also occupies the position of a beneficiary "can avoid any harshness of this rule by applying to the proper court for permission to purchase *or by dealing fairly and openly with the other beneficiaries in effecting a family settlement.*" [emphasis added] 47 Va.L.Rev. 1105, 1113 (1961).

█ In 1971, Carroll Mac and Evelyn executed a boundary line agreement in an effort to compromise the disagreement over ownership of the Stokes tract. Carroll Mac attacks the agreement as being a product of fraud, duress or coercion and, therefore, invalid. The defendants argue in opposition that the plaintiff, Carroll Mac, signed the document with the full realization of its ramifications. From the evidence, the Court concludes that the defendants' position is fully supported. In reaching this conclusion, the Court relies primarily on the testimony of Carroll Mac. At the time of executing the boundary line agreement on June 24, 1971, Carroll Mac was twenty-eight years of age. Carroll Mac was raised in homes which were across the road from the Home farm and the Stokes tract and was, therefore, familiar with the properties. He graduated from preparatory school and attended college. The Court can only reason that Carroll Mac was a mature and intelligent adult when he entered into the boundary line agreement. Furthermore, Carroll Mac received a letter from his personal attorney, dated May 27, 1971 (Exhibit 25), informing Carroll Mac that, "I feel more assured at this point that it was the intention of your father that the Stokes tract was to have passed to you under the Residuary clause of the will." Thus, even if a duty to reveal the Composite Plan existed and even if Carroll Mac's interpretation of that plan correctly indicated a valid claim to the Stokes tract, Carroll Mac would have been given no more information than what he already

3. De bene esse deposition of Jack M. Hill taken October 10, 1975, at pages 6, 7 and 9.

knew through his own attorney. Clearly, Carroll Mac was in a position and of a capacity to understand and judge the status of his claim prior to executing the boundary line agreement.

 Carroll Mac also assails the boundary line agreement as being invalid due to lack of adequate consideration. After execution of the agreement, Carroll Mac received a check for $16,052.50 (Exhibit 31), which, in fact, represents the proceeds from a timber sale off land ultimately devised to Carroll Mac. Evelyn always considered the fund belonged to Carroll Mac even though it was created before Mr. Williamson, Sr.'s death. This transfer of funds, therefore, does not form the basis of the consideration for signing the boundary document. Instead, the agreement was executed under seal for the purpose of settling a family dispute. The language in *Weade v. Weade*, 153 Va. 540, 150 S.E. 238 (1929) is pertinent to this issue:

> "The appellants were anxious, as they testified, to avoid litigation involving the family and to recompense their sisters for services rendered. They were dealing at arm's length, all having the right to accept or reject the proposal of Frank Weade, all being sui juris, and yet, without any suggestion of fraud, they signed the agreement which they now seek to repudiate. This they will not be permitted to do.
>
> "A court of equity looks with favor upon family settlements, and is not meticulous in seeking to discover legal complications." *Id.* 150 S.E. at 239–40.

Equally significant is Carroll Mac's admission under examination by the Court that by signing the boundary line agreement releasing the Stokes tract, Evelyn would no longer bother him about the matter and family harmony would be restored.[4] Under these circumstances, the intrinsic value of a negotiated end to the family feud reaches the plateau of adequate consideration. There is no reason to prevent the relinquishment of an alleged interest in real property in order to secure peace in an otherwise close family. It is a fair and reasonable solution.

The law and the evidence sustains the conclusion that the boundary line agreement, dated April 9, 1970, represents a meeting of the minds of the parties thereto, supported by adequate consideration and, therefore, constitutes a valid agreement.

## II

Although the boundary line agreement between Carroll Mac and Evelyn cannot be overturned because of misconduct by the defendants or lack of adequate consideration, the plaintiff, Carroll Mac, asserts that the agreement is of no binding force or effect. Plaintiff contends that under Virginia law an agreement as to the location of a disputed boundary cannot pass title from one person and vest it in another where there is no adverse possession of the land in question. The reason given by the plaintiff is that such an agreement is not, itself, an independent source of title. On the other hand, the defendants' view of Virginia law is, in essence, an argument that plaintiff is relying on cases dealing with *oral* boundary agreements and that the written agreement in controversy interprets the ambiguous language of a will thereby fixing a boundary line as opposed to transferring title to land.

Prior to resolving this legal dispute, the Court must address itself to a factual determination that the boundary line agreement, dated April 9, 1970 (Exhibit 2) encompasses the Stokes tract. From the evidence and the exhibits, the Court finds as fact that the Stokes tract lies in its entirety, north of the boundary line described in the boundary line agreement dated April 9, 1970, and, therefore, on Evelyn's side of the boundary. The Court, therefore, must decide whether

---

4. While this may tend to show undue pressure, it must be remembered that Carroll Mac made the decision to sign the boundary agreement after receiving advice of counsel that he had a valid claim to the Stokes tract.

the boundary line agreement divests Carroll Mac of any interest which he may have had in the Stokes tract.

■ It is clear in Virginia that an oral boundary line agreement unaccompanied by actual possession of the land acquired provides no foundation for a claim of title. *McMurray v. Dixon*, 105 Va. 605, 54 S.E. 481 (1906). The cases cited by the plaintiff buttress this legal principle but do not decide the precise issue before the Court. *See Wade v. Ford*, 193 Va. 279, 68 S.E.2d 528 (1952); *Bradshaw v. Booth*, 129 Va. 19, 105 S.E. 555 (1921); *Reynolds v. Wallace*, 125 Va. 315, 99 S.E. 516 (1919); *Cox v. Heuseman*, 124 Va. 159, 97 S.E. 778 (1919). The Virginia Supreme Court has yet to decide a case concerning an attempt to enforce a duly recorded written boundary line agreement.

■ In other jurisdictions, the principle is apparently well settled that where the location of the boundary lines of adjoining landowners is in dispute, the owners may establish the lines by a written agreement with each owning up to this line as if it was a natural boundary. 12 Am.Jur. Boundaries § 77 (1964); 11 C.J.S. Boundaries § 64 (1938). An examination of Virginia law leads to the same conclusion.

In the leading case of *McMurray v. Dixon, supra*, the Supreme Court of Virginia sets forth the following rule upon which the plaintiff relies:

"It is settled law in this state that the disclaimer of a freehold estate can only be made by deed or in a court of record. In the case of disputed boundaries the parties may agree upon a line, by way of compromise, and if they take and hold possession up to that line for the requisite statutory period, the mere possession will in time ripen into title. But no mere parol agreement to establish a boundary and thus exclude from the operation of a deed land embraced therein, can divest, change, or affect the legal rights of the parties growing out of the deed itself." *Id.* 54 S.E. at 483.

Thus, when presented with the opportunity, the Virginia Court expressly did not postulate a rule precluding all types of boundary line agreements, thereby indicating the existence of a distinction between oral and written boundary line agreements. Furthermore, the language quoted and the cases relying thereon have dealt with oral boundary line agreements which, in some instances, were based upon land surveys. If the Court had reached a contrary decision, oral statements which can neither be recorded nor proved save by parol evidence in later years, would have been permitted to establish title to realty.[5] The emphasis is on providing a reliable record of title; the same theory underscores the Statute of Frauds. In the case before the Court, we have a writing, under seal, duly recorded in the Clerk's Office of the Court within whose jurisdiction the land is located.

■ The factual circumstances which control the decision in *McMurray* and subsequent similar cases do not present themselves in this case. It is consistent, therefore, with the law of Virginia and the facts of this case to hold that a written boundary line agreement may determine the location of a disputed boundary line between adjoining landowners, and this Court so holds.

### III & IV

By reaching the conclusion that Carroll Mac is bound by the line fixed in the boundary line agreement dated April 9, 1970, and that the tract of land in question is clearly shown to be on Evelyn's side of the line established by the agreement, the Court need not inquire into

---

5. Thus, the establishment of a boundary line derived from a deed and not claimed by adverse possession "cannot be established wholly by parol evidence . . . To hold otherwise would be to permit parol evidence to become an independent source of title, which by the weight of authority, is not permissible." *Brauer v. Adams*, 199 Va. 630, 101 S.E.2d 558, 561-2 (1958).

the meaning of the terms of the will of Carroll M. Williamson, Sr. In any event, there is ample evidence showing that the will contained imprecise language. Notwithstanding the ambiguous will terms, the Court can find no basis in fact or law on which to overturn what the parties themselves have done by reaching a compromise.

The Clerk is directed to enter judgment for all the defendants and to send a copy of this Opinion and Order to all counsel.