# Richmond.

## JUNIUS TRIMMER v. R. C. MARTIN.

### January 15, 1925.

1. BOUNDARIES—*Courses and Distances—Monuments.*—The established rule that the location on the ground of courses and distances designated in the title papers must give way to known or reputed monuments, has reference only to monuments which are designated in the title papers.

2. BOUNDARIES—*Courses and Distances—Monuments.*—Evidence of the location of monuments not designated in the title papers may be properly considered in certain cases, for certain purposes, but not to alter the designation of the courses or distances of the boundary lines contained in the title papers, under which alone both plaintiff and defendant derive title, where there is no practical difficulty in locating on the ground the line as designated in the title papers.

3. BOUNDARIES—*Courses and Distances—Monuments—Case at Bar.*—In the instant case, a proceeding to determine a boundary line between plaintiff and defendant, none of the evidence introduced by plaintiff with respect to the location on the ground of certain corner stakes, or of an oak tree, marked fore and aft, or of other things appearing on the ground, mentioned in the evidence but not designated in the title papers, could have the effect of altering the courses and distances as designated in the title papers fixing the location of the respective ends of the dividing line; and leaving out of consideration this evidence, there was no evidence whatever to support the verdict of the jury in its location of the line in controversy. On the contrary, plaintiff's own chief witness, a surveyor, testified that there was no practical difficulty in locating on the ground the line in controversy as designated in the title papers, and that the verdict line did not coincide with the line so designated.

4. BOUNDARIES—*Title Papers—Extrinsic Evidence.*—A party claiming title by deeds must rely upon such deeds to define specifically the boundaries of his claim. But extrinsic evidence is admissible to locate on the ground the boundaries designated in a general description thereof, so as to identify the land conveyed, and deeds or grants conveying adjacent lands referred to in such general description and extrinsic evidence applying the boundaries therein designated to their proper subject matter are also admissible in evidence.

Error to a judgment of the Circuit Court of Hanover county, in a proceeding to determine a boundary line. Judgment for plaintiff.    Defendant assigns error.

*Reversed and remanded.*

This is a proceeding by petition, under section 5490 of the Code (Acts 1912, page 133, *et seq.*), to have a certain boundary line of real estate ascertained and established, instituted by R. C. Martin, the defendant in error, against Junius Trimmer, the plaintiff in error.    The parties will be hereinafter referred to in accordance with their positions as plaintiff and defendant in the court below.

The boundary line sought to be ascertained and established is a single line which divides the land of the plaintiff, designated in the record as lot No. 1, and the land of the defendant so designated as lot No. 2, to which they derive title by *mesne* conveyance from the original grantees of these lots, respectively, as set forth in a certain deed of partition, of date October 20, 1884, of certain land of Henrietta Gibson, deceased, into five parcels between the heirs at law of the latter.    The partition deed recites that the land partitioned thereby consisted "according to a recent survey, made by H. W. Wingfield, C. E., 120 acres; that the said heirs at law "having mutually agreed upon a plan of division as set forth in a plat and survey made by H. W. Wingfield, C. E., which is to be recorded with and taken as a part of this deed, to which reference is made for a full understanding of the same;" and the partition deed thereupon proceeds to convey the respective five parcels to the respective grantees thereof, as lots Nos. 1, 2, 3, 4 and 5 as shown on said plat, the only words of description in the conveyance of the respective parcels involved in the

instant case which are material to be stated being that
the other heirs convey "unto John M. Jones and L. B.
Jones, his wife, all their interest in lot No. 1 of the above
described land, assigned them in the division, containing
24 acres    *    *," and "unto Lucien M. King and H. O.
King, his wife, all their interest in lot No. 2 of the above
described land, assigned them in the plan of division,
containing 24 acres    *    *."

The plat referred to in the partition deed was recorded
therewith; it bears date October 13, 1883; and lot No.
1 is on the extreme eastern side of the 120 acre tract, the
other lots being to the west of lot No. 1, adjoining each
other.    That portion of the plat which shows lots Nos.
1 and 2 (the letters A, B, C, D, E and F being supplied),
is as follows:

None of the *mesne* conveyances give any designation
of the location of the dividing line between lots 1 and 2.

There is no evidence showing any possession, either by plaintiff or defendant, which conferred any title by adverse possession.

There was a verdict and the judgment under review in accordance therewith, which ascertained and established the dividing boundary line in question in accordance with a plat of a survey made by a surveyor, witness for the plaintiff, in August, 1922, which plat was filed with the petition of the plaintiff, and the petition claimed that such was the true line as designated in said partition deed and Wingfield plat.

The testimony both for the plaintiff and the defendant embraces a great number of details which are immaterial. It is sufficient to say that the evidence for the plaintiff tended to show the following facts, namely:

That there was no practical difficulty which is mentioned in the evidence in the way of locating on the ground the points A and B and the line A-B, as designated on the Wingfield plat; that the surveyor, witness for the plaintiff, from data furnished by such plat and measurements on the ground, did locate approximately the points A and B on the ground; that nearly in the exact location of the point A, as so located, the witness found "an old cedar stake;" that he found no mark at corner B, as so located; but that the dividing boundary line shown on the plat made by him, which is the line fixed by the verdict (hereinafter calledt he verdict line), does not begin or end at these points, and so does not follow the line A-B, as designated on the Wingfield plat; that the verdict line begins at a point "some distance" west of the point B, as designated on the Wingfield plat, where there was at the time it was surveyed as aforesaid by such witness "a new cedar stake;" that thence the verdict line runs northward a short distance to an old marked oak (chopped as a fore and aft line tree, but by

whom or when chopped the evidence fails to show), thence a straight line, crossing the said line A-B to a point on the opposite side of lots Nos. 1 and 2, 100 feet east of the point A as designated on the Wingfield plat.

The evidence for the plaintiff further shows that the verdict line was made to deviate the 100 feet to the east of the aforesaid point A, as designated on the Wingfield plat, for the following reason, among others, as stated in the testimony of the surveyor who ran that line: "* * in order to give Martin" (t h e plaintiff) "approximately 24 acres * *."

The verdict line gave the defendant twenty-nine and the plaintiff twenty-four acres of land.

The relative locations of t h e respective lines w i l l more clearly appear from the following rough sketch of them, which is not drawn to scale, on which the verdict line is shown by the lines A' B' and the title papers line is approximately shown by the line A-B.

The evidence for plaintiff and defendant concurs in showing that both of them, prior to the trial, were under the mistaken impression, or belief, that the point B, was the point B, as designated on the Wingfield plat; and that the plaintiff had built a wire fence from B' to the oak tree on the county road, on practically a straight line from B' in the direction of the point A, under the mistaken impression or belief that the fence

was on the true dividing line between his land and that given defendant, as designated in said partition deed and plat; but this was done within less than the statutory period of fifteen years requisite to confer title upon the defendant up to such line.

The plaintiff alleged in his petition that he was the sole fee simple owner of the land in question. It was discovered after the verdict that the conveyance to the plaintiff was not to him alone, but to himself and wife, jointly.

*Walter Sydnor,* for the plaintiff in error.

*Geo. E. Haw,* for the defendant in error.

SIMS, P., after making the foregoing statement, delivered the following opinion of the court:

There are a number of questions presented by the assignments of error, but in the view we take the consideration of only one of such questions is necessary for the decision of the case, and that is as follows:

1. Was the verdict, in its location of the line involved as the true dividing line between the lands of the plaintiff and defendant, contrary to the law and the evidence?

The question must be answered in the affirmative.

[1-3] So far as the evidence discloses, neither the plaintiff nor defendant acquired any title by adverse possession, either by actual or constructive possession under claim or color of title, for the requisite statutory period. Both derived title solely under, and, therefore, had to rely solely upon, the deed of partition and the Wingfield plat therein referred to and made a part thereof, to define the true boundaries of their respective lands. *Griggs* v. *Brown,* 126 Va. 556, 102 S. E. 212;

*Bradshaw* v. *Booth*, 129 Va. 19, 38, 105 S. E. 555; and cases cited in those decisions. The partition deed and plat constitute the title papers—the sole source of title— of both the plaintiff and defendant. The title papers contain no designation of any corner or line monument whatever anywhere on or along the dividing line in question as fixing its location. The only data on the subject designated in the title papers are corners of the land with adjacent land owners away from the aforesaid dividing line, and the courses and distances from the said corners to the respective ends of said dividing line, and the fact that that line is a single straight line, all as shown on the Wingfield plat. That plat, to any competent surveyor, designates such courses and distances, even where not written out on the plat; since they may be readily ascertained therefrom by the use of the surveyor's instruments. The established rule, that the location on the ground of courses and distances designated in the title papers must give way to known or reputed monuments, has reference only to monuments which are designated in the title papers. Evidence of the location of monuments not designated in the title papers may be properly considered in certain cases, for certain purposes, but not in such a case as that before us, to alter the designation of the courses or distances of the boundary lines contained in the title papers, under which alone both plaintiff and defendant derive title. Hence, none of the evidence with respect to the location on the ground of certain corner stakes, or of the oak tree, marked fore and aft, or of other things appearing on the ground, mentioned in the evidence, but not designated in the title papers, can have the effect of altering the aforesaid courses and distances as designated in the title papers in the instant case, fixing the location of the respective ends of the aforesaid dividing line.

Leaving out of consideration the last mentioned evidence, it is plain that there is no evidence whatever to support the verdict in its location of the line in controversy. On the contrary, the testimony of the plaintiff's own chief witness, the surveyor for the plaintiff, is to the effect that there is no practical difficulty in the way of locating on the ground the line in controversy as designated in the title papers, and that the verdict line nowhere coincides with the line in controversy, as so designated, except where they cross each other. (See the sketch preceding this opinion, on which the line in controversy is designated in the title papers, as results from the location which such surveyor made on the ground of the ends of such line, is approximately shown as A-B, and the verdict line as A' B'.)

[4] The consideration that one of the circumstances which induced such surveyor to make the verdict line deviate at one end (at A' on the above sketch) from the true location of it there as designated in the title papers, was in order to give the plaintiff the twenty-four acres called for in the title papers, does not alter the correctness of the conclusion just stated, because no need of change of the line for that reason would have arisen if the other end of the line were located at the point designated in the title papers (at B on the above sketch). It is true that the plaintiff in his petition alleges that the true line begins at the point where the verdict line begins (at B' on said sketch), and runs thence to the oak tree; and in that condition of the pleadings he cannot be heard to complain that that end of the verdict line deviates from the true location of it there as designated in the title papers; but that furnishes no evidence to support the line in its aforesaid deviation at the other end of it.

The case must, therefore, be reversed, because there

is no evidence such as the law requires to support the verdict. We shall not enter a final judgment, however, as we feel that the ends of justice will be best attained by remanding the cause, with leave to the plaintiff to amend his petition in its allegation of the location of the true line claimed by him as designated in the title papers, and let the case be retried, in accordance with the views expressed in this opinion, upon the issue of fact as to the correct location on the ground of the boundary line in question as designated by the data furnished by the title papers, without the admission of any parol evidence as to any corner or line monument, or mark, on the ground of such dividing line not mentioned in the title papers. This, of course, does not mean that extrinsic evidence will not be admissible to locate on the ground such of the corners C, D, E or F (see portion of Wingfield plat copied above), as may be found material to be located as designated in the title papers, under the well settled rule on that subject. *Bradshaw* v. *Booth, supra,* 129 Va. at p. 38, 105 S. E. 555.

The case will also be remanded with leave to the plaintiff, if he so desires, to amend the allegations of his petition with respect to his interest in the land, so as to conform to the fact in that particular shown in evidence; and with direction that the wife of the plaintiff be joined as coplaintiff with her husband, if she shall so move the court. This will doubtless dispose of all questions arising out of those matters presented by the assignments of error, so that there is no occasion to deal with any of such questions in this opinion.

The case will be reversed and remanded, as above stated.

*Reversed and remanded.*